[No. B151466. Second Dist., Div. Four. Feb. 27, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
LOUIE BRACAMONTE et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the second introductory paragraph, and parts 1. through 5. of the Discussion.

## COUNSEL

Corinne S. Shulman, under appointment by the Court of Appeal, for Defendant and Appellant Louie Bracamonte.

Jo Anne D. Roake, under appointment by the Court of Appeal, for Defendant and Appellant Jose Luis Medina.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lance E. Winters and Valerie A. Baker, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CURRY, J.**—Louie Bracamonte and Jose Luis Medina (collectively appellants) appeal from their respective judgments following a jury trial that resulted in their conviction of first degree murder (Pen. Code, § 187, subd. (a); count 1)[1] and first degree robbery (§ 211; count 3) and true findings on the allegations that the murder occurred during the commission of a robbery (§ 190.2, subd. (a)(17)); that during the offenses Bracamonte used a weapon (blunt instrument) (§ 12022, subd. (b)(1)); and that as to Medina, he personally and intentionally discharged a firearm which inflicted great bodily injury (GBI) or death (former §§ 12022.5, subd. (a)(1), 12022.53, subds. (b)-(d)). Bracamonte was sentenced to life without the possibility of parole (LWOP), plus one year for the weapon use enhancement, on count 1 and to a concurrent term of five years, i.e., the four-year middle term on his conviction plus one year for the weapon use enhancement, on count 3. Medina was sentenced on count 1 to LWOP, plus 25 years to life on a firearm discharge and use enhancement. The court imposed a concurrent term of four years for his robbery conviction in count 3. The court also

---

[1]All further section references are to the Penal Code.

imposed and stayed certain firearm discharge and use enhancements as to counts 1 and 3.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

Appellants attack their respective sentences on the ground the multiple punishment bar of section 654 compels their sentence on count 3 to be stayed. Medina further contends two of his three stayed firearm discharge and use enhancements on count 3 must be stricken as well all three of those enhancements as to count 1.

Based on our review of the record and applicable law, we conclude the trial court erred in failing to stay the four-year term for appellants' convictions on count 3 and in its disposition of the firearm discharge and use findings on counts 1 and 3 as to Medina. In all other respects, we affirm the judgment.

### FACTUAL SUMMARY

■ We view the evidence in the light most favorable to the People and presume the existence of every fact the trier could reasonably deduce from the evidence that supports the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].) The following summary is based on this appellate standard of review.

On January 21, 2000, around 4:00 or 5:00 p.m., Joey Kovall was inside his home on West Bonita in Glendora when he told Audra Mahlke, his girlfriend, that after he removed his shirt during a fight with Steve Sierra, Sierra said he would be back and left. Kovall cautioned Mahlke they need to be careful that night. Kovall and Mahlke sold marijuana and methamphetamine.

Around 7:30 p.m., someone knocked on Kovall's front door. At home with Kovall was Mahlke, Allen Baldwin, Jason Reader, and someone called "Clown." When Kovall asked who was there, a voice responded, "Mike." After Kovall opened the door and identified himself in response to Medina's request for "Joey[,]" Medina pulled out a gun, pointed it at Kovall, and said, "Break yourself." "Break yourself" to Reader meant Kovall was expected to hand over everything he had. Mahlke believed it meant "[g]ive him what you have or run[.]" Medina then fired the gun. Afterwards, appellants and another man rushed inside. Medina and Kovall fought in the living room as Malke, Reader, Baldwin, and Clown fled to other parts of the house.

From her hiding place, Mahlke saw Kovall hitting Medina with both hands and Bracamonte hit Kovall with a black, shiny object. When Mahlke

---

*See footnote, *ante*, page 704.

ran out the back door, she heard someone say "shoot him" twice and afterwards heard at least three gunshots. Looking back, she saw appellants leap over the couch, remove something from the living room floor, jump back and exit the front door. Mahlke's purse and Kovall's bat were later discovered missing.

Around that time, Michelle Giampaolo and her boyfriend drove up to Kovall's residence to buy drugs. Upon seeing Bracamonte and Andrew Hernandez standing at Kovall's front door, Giampaolo went around to the back door. She heard the front door open, someone outside yell, "Break yourself" and then five gunshots. Afterwards, she saw Bracamonte and Hernandez run out the front door to Sierra's waiting truck.

Around 7:30 p.m. while passing by in his car, Brian Majerus observed two or more individuals run out of the house and enter a white truck through the passenger door. One was holding a purse and a bat. Someone was seated in the driver's seat.

Mahlke identified Medina and Bracamonte from photographic lineups. She recognized Bracamonte as the attacker who wielded the black object.

Around 11:15 p.m., after the police stopped Sierra in his white truck, a bloodstain matching Kovall's blood type was found in the truck.

Kovall sustained two gunshot wounds. The wound through his chest, heart, and left lung was fatal. Kovall also sustained numerous fractures to his head and skull. Such fractures also contributed to his death.

Medina presented evidence to support his alibi and mistaken identity defenses. Bracamonte also presented evidence in support of his mistaken identity defense.

DISCUSSION

1.-5.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

6. *Section 654 Compels Staying of Count 3 Sentences*

 Appellants contend, and respondent concedes, their respective four-year terms imposed on count 3 must be stayed under the multiple punishment bar of section 654. We find their joint contention to be meritorious.

---

*See footnote, *ante*, page 704.

(See, e.g., *People v. Meredith* (1981) 29 Cal.3d 682, 696 [175 Cal.Rptr. 612, 631 P.2d 46] [conviction of, but not punishment for, both felony murder and the related robbery proper]; *People v. Boyd* (1990) 222 Cal.App.3d 541, 575-576 [271 Cal.Rptr. 738] [robbery sentence stayed under § 654 where robbery was crime underlying first degree felony murder conviction].)

■ Bracamonte further contends his one-year weapon use enhancement on that count also must be stayed. We agree. Where the base term of a sentence is stayed under section 654, the attendant enhancements must also be stayed. (See, e.g., *People v. Guilford* (1984) 151 Cal.App.3d 406, 411 [198 Cal.Rptr. 700].)

*7. Correction of Medina's Firearm Discharge and Use Enhancements Warranted*

Medina contends two of his three stayed firearm discharge and use enhancements on count 3 must be stricken as well as all three of those enhancements as to count 1. We find the court committed various errors in sentencing Medina on the firearm discharge and use findings as to counts 1 and 3.

In pertinent part, the information alleged that in the commission of the offenses pleaded in counts 1 and 3, Medina "personally used" a handgun (§§ 12022.5, subd. (a)(1), 12022.53, subd. (b)) and he "personally and intentionally discharged" a handgun (§ 12022.53, subd. (c)) "which proximately caused . . . death" to Kovall (§ 12022.53, subd. (d)). The jury found these allegations to be true.

There is an apparent conflict between the clerk's transcript and the reporter's transcript regarding which enhancements were imposed and which were stayed. The clerk's transcript recites that on count 1, the court imposed an enhancement of "25 years to li[f]e" pursuant to section "1203.06A(A)(1) [*sic*]" and that the "remaining" enhancements pursuant to sections "12022.5, 12022.53(B), 12022.53(D) and 12022.53 (C)" were "imposed but stayed pursuant to . . . section 654." With respect to count 3, the court did not expressly impose any enhancement of 25 years to life. Rather, the "[s]entence as to allegations [*sic*] pursuant to . . . sections 1203.06(A)(1), 12022.5(A)(1), 12022.53(B) and 12022.53(D) is imposed and stayed pursuant to . . . section 654." The court made no ruling regarding the finding under subdivision (c) of section 12022.53 on count 3.

In contrast, the reporter's transcript reflects that as to count 1, the court imposed a "25[-year-to-]life" enhancement for "personal use of a firearm"

pursuant to section "12022.53 (c) [*sic*] [.]" In discussing Medina's sentence on count 3, the court ruled that having imposed such enhancement on count 1, "all [remaining] allegations [*sic*] relating to personal use of a firearm are stayed by virtue of 654 and/or subdivision [(f)] of 12022.53. The remaining special allegations [*sic*] as to count 1, specifically, 12022.5, 12022.53, subdivision [(b)], 12022.53(d), are imposed but stayed by virtue of 654 as to 12022.5 and by virtue of subdivision [(f)] of 12022.53(B) [*sic*]."

We need not determine which transcript reflects the correct record. Under either scenario, the court was incorrect in the sentence it imposed with regard to the personal discharge and use findings.

Initially, we deem the 25-year-to-life enhancement on count 1 to have been imposed pursuant to subdivision (d) of section 12022.53, rather than under section 1203.06, subdivision (c) of section 12022.53 or some other section.

A plain reading of section 1203.06 reveals it does not pertain to the imposition of any enhancement for the discharge or use of a firearm. Subdivision (c) of section 12022.53 mandates a consecutive 20-year enhancement for a qualifying felony conviction during which the defendant "intentionally and personally discharges a firearm," and thus, cannot serve as the authority for imposition of a 25-year-to-life enhancement. Similarly, neither section 12022.5, subdivision (a), which provides for an enhancement of 3, 4, or 10 years, nor subdivision (b) of section 12022.53, which provides for a 10-year enhancement for use of a firearm, can support the enhancement imposed. The only applicable enhancement is the consecutive 25-year-to-life term set forth in subdivision (d) of section 12022.53, which pertains to a defendant who during a qualifying felony "intentionally and personally discharges a firearm and proximately causes . . . death[] to any person other than an accomplice . . . ."

The remaining related issues are whether the trial court was required to impose and then stay such enhancement as to count 3 and whether the court erred in imposing and then staying the remaining firearm discharge and use enhancements on counts 1 and 3.

Respondent urges California Rules of Court, rule 4.447 empowers the trial court to stay the remaining enhancements. We disagree. No case has expressly applied this rule to a situation involving an indeterminate life term and the Advisory Committee Comment refers to enhancements only in the context of the Determinate Sentencing Act (DSA). (See, e.g., § 1170.1; see also *People v. Felix* (2000) 22 Cal.4th 651, 659 [94 Cal.Rptr.2d 54, 995 P.2d

186] [DSA, e.g., § 1170.1, inapplicable where both determinate and indeterminate sentences involved].) Additionally, such rule can only implement, not contradict or vary, the controlling legal principles.

There appears to be no one definitive case or statutory authority resolving these issues. Nonetheless, when viewed in context, the applicable case and statutory authorities lead us to conclude the appropriate resolution requires the trial court to: (1) impose all firearm discharge and use enhancements, except for the use enhancement under section 12022.5, on counts 1 and 3; (2) stay all imposed enhancements, including the 25-year-to-life enhancement (§ 12022.53, subd. (d.) as to count 3; and (3) stay all imposed enhancements in count 1 except for the one for 25 years to life (§ 12022.53, subd. (d)).

Initially, we point out the word "impose" encompasses both situations where an enhancement is imposed and then executed and imposed and then stayed. However, as a practical matter, the word "impose" is often employed as shorthand to refer to the first situation, while the word "stay" often refers to the latter.

█ The better rule is the trial court must either impose an enhancement or strike the underlying finding, and set forth its reasoning for such striking in the minutes. It is without authority simply to stay the enhancement. (See, e.g., *People v. Haykel* (2002) 96 Cal.App.4th 146, 151 [116 Cal.Rptr.2d 667] [enhancement either imposed or stricken, not stayed]; *People v. Bradley* (1998) 64 Cal.App.4th 386, 390-391 [75 Cal.Rptr.2d 244] *People v. Jones* (1992) 8 Cal.App.4th 756, 758 [10 Cal.Rptr.2d 502]; *People v. Irvin* (1991) 230 Cal.App.3d 180, 190 [281 Cal.Rptr. 195] [failure to impose or strike enhancement unauthorized sentence subject to correction on appeal]; contra, *People v. Vergara* (1991) 230 Cal.App.3d 1564, 1568-1569 [282 Cal.Rptr. 90] [permanent staying of enhancement equivalent of striking enhancement].)

Nonetheless, "an enhancement must necessarily be stayed where the sentence on the count to which it is added is required to be stayed [under section 654]." (*People v. Guilford, supra,* 151 Cal.App.3d 406, 411.) "[F]ailure to stay an enhancement, where the base term to which it is added is stayed, and requiring that time be served only for the enhancement[,] has the [improper] effect of elevating the enhancement to the status of an offense. Enhancements are not offenses, they are punishments. . . ." (*Id.* at p. 412, citations omitted.)

We first conclude the court erred in failing to find the 25-year-to-life enhancement under subdivision (d) of section 12022.53 applied to count 3.

Although this enhancement was imposed as to count 1 (murder), it was again triggered by Medina's conviction in count 3 for robbery. (§ 12022.53, subds. (a)(4) [enhancement applies to robbery conviction], (f) ["Only one additional term of imprisonment under this section shall be imposed per person *for each crime*" (italics added)]; see also *People v. Perez* (2001) 86 Cal.App.4th 675, 681-682 [103 Cal.Rptr.2d 533] [plain reading "makes clear that the subdivision (f) limitation applies 'for each crime,' not each criminal."].)[4]

■ As discussed *ante*, the four-year term on Medina's robbery conviction in count 3 must be stayed under section 654. Accordingly, the trial court was required to stay the 25-year-to-life enhancement (§ 12022.53, subd. (d) on that count. (Cf. § 12022.53, subd. (g) ["Notwithstanding any other provision of law . . . the execution or imposition of sentence [shall not] be suspended for[] any person found to come within the provisions of this section"].)

■ We next conclude where, as here, an enhancement under section 12022.53 applies, the trial court must strike the firearm use finding under section 12022.5.[5] "An enhancement involving a firearm specified in Section . . . 12022.5 . . . shall not be imposed on a person in addition to an

---

[4]The issue of whether multiple enhancements is proper may be resolved by our Supreme Court in *People v. Oates* (2002) 97 Cal.App.4th 1172, review granted July 24, 2002, S106796, on the issue whether more than one enhancement (§ 12022.53, subd. (d)) may be imposed for firearm use where only one of multiple victims suffers GBI.

[5]Respondent takes the position that the section 12022.5 firearm use enhancement on counts 1 and 3 as to Medina cannot be stricken for the reasons (1) "the trial court was prohibited in [2000 and] 2001 from striking a personal firearm use allegation under section 12022.5"; and (2) "[i]n 2002, a year after appellants were sentenced in this case, the California Legislature amended section 12022.5 to include subdivision (c), which provides, 'Notwithstanding Section 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section.' (Stats. 2002, ch. 126 (AB 2173), § 3.) This amendment was a declaration of existing law as set forth in *People v. Thomas* (1992) 4 Cal.4th 206 [14 Cal.Rptr.2d 174, 841 P.2d 159], in which the California Supreme Court held that a trial court has no discretion to strike a firearm enhancement imposed under section 12022.5. (*Id.* at pp. 208, 212-214.)"

Respondent's position is incorrect. Section 12022.5 must be construed in conjunction with section 12022.53 where, as here, personal firearm use under section 12022.53 is also alleged.

The court strikes a section 12022.5 enhancement under subdivision (f) of section 12022.53, which provides that "An enhancement involving a firearm specified in Section . . . 12022.5 . . . *shall not be imposed* on a person in addition to an enhancement imposed pursuant to this section." (Italics added.) Such directive is mandatory. No discretion is involved. (See also *People v. Jenkins* (1980) 28 Cal.3d 494, 505 [170 Cal.Rptr.2d 1, 620 P.2d 587]; *People v. Tanner* (1979) 24 Cal.3d 514, 521 [156 Cal.Rptr.2d 450, 596 P.2d 328].)

Respondent's companion position is that the trial court properly imposed and stayed the section 12022.5 enhancements, because "by staying the enhancement, it preserved . . . Medina's sentence in the event of a reversal on another enhancement or count" and "safeguarded the section 12022.5 findings properly made at trial." Respondent urges that by

enhancement imposed pursuant to . . . section [12022.53]." (§ 12022.53, subd. (f); cf. *People v. Herrera* (1998) 67 Cal.App.4th 987, 993-994 [79 Cal.Rptr.2d 539] [§ 12022.5 use enhancement must be imposed, not stayed, and underlying finding may not be stricken under § 1385].)

In pertinent part, section 12022.53 also provides: (1) "*Only one additional term* of *imprisonment under this section shall be imposed per person for each crime.* If more than one enhancement per person is found true under this section, the court shall impose upon that person the enhancement that provides the longest term of imprisonment." (§ 12022.53, subd. (f), italics added.)

If viewed in isolation, the language of section 12022.53, subdivision (f) would dictate that the trial court in this case could only impose the 25-year-to-life enhancement (§ 12022.53, subd. (d) [intentional and personal discharge of firearm proximately causing GBI or death]) and must strike the findings underlying the 10-year (§ 12022.53, subd. (b) [personal firearm use]) and 20-year (§ 12022.53, subd. (c) [intentional and personal discharge of firearm]) enhancements. Such construction of section 12022.53, however, would conflict with subdivision (h) of that section, which provides: "Notwithstanding Section 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section."

■ To harmonize these seemingly conflicting provisions, we conclude that section 12022.53 operates to require the trial court to add the applicable enhancement for each firearm discharge and use allegation under that section found true and then to stay the execution of all such enhancements except for the one which provides the longest imprisonment term. (See, e.g., *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299] ["The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. . . ." (citation omitted)].)

---

staying the section 12022.5 enhancements, the court "did not add 'additional' prison terms" proscribed by section 12022.53, which, as rephrased by respondent, "mandates that the greatest enhancement be imposed and prohibits imposition of 'additional term[s] of imprisonment' for the enhancement. (§ 12022.53, subd. (f).)"

This position is untenable in the face of the plain and clear language that a section 12022.5 firearm use enhancement "shall not be imposed . . . in addition to an enhancement imposed pursuant to . . . section [12022.53]." (§ 12022.53, subd. (f).)

Moreover, such position is also based on the faulty premise that staying of the section 12022.5 enhancement is necessary "in the event of a reversal on another enhancement or count." No such need arises. In the situation where the reviewing court finds no enhancement under section 12022.53 could be imposed, then the section 12022.5 finding would be revived by operation of law.

In summary, we conclude the trial court should have: (1) stricken the use findings under section 12022.5 for counts 1 and 3; (2) imposed the 25-year-to-life enhancement on count 1 pursuant to subdivision (d) of section 12022.53; (3) imposed that enhancement on count 3 and then stayed it because the base term was stayed (§ 654); and (4) imposed and stayed the 10-year and 20-year firearm use and discharge enhancements (§ 12022.53, subds. (b), (c)) on counts 1 and 3.

### DISPOSITION

The sentence on count 3 as to Bracamonte . imposing the concurrent four-year term on his robbery conviction, plus the one-year weapon use enhancement is reversed. The sentence as to Medina imposing the concurrent four-year term on his robbery conviction on count 3 is also reversed. The order disposing of the findings on the personal discharge and use of a firearm (§§ 12022.5, subd. (a), 12022.53, subds. (b), (c), & (d)) is reversed. The matter is remanded with directions to the court to impose and stay the four-year term on count 3 as to Bracamonte and Medina; to impose and stay the one-year weapon use enhancement on count 3 as to Bracamonte; to strike the 12022.5 use findings on counts 1 and 3 to Medina; and to impose and stay the enhancement under section 12022.53, subdivision (d), on count 3 as to Medina; and to impose and stay the enhancements under section 12022.53, subdivisions (b) and (c) as to Medina on counts 1 and 3. In all other respects, the judgments are affirmed. The trial court is further directed to prepare amended abstracts of judgment consistent with the views expressed in this opinion.

Vogel (C. S.), P. J., and Hastings, J., concurred.

Petitions for a rehearing were denied April 1, 2003, and the opinion was modified to be read as printed above. The petition of appellant Louie Bracamonte for review by the Supreme Court was denied May 14, 2003.