135 Cal.Rptr.2d 912 (2003)
109 Cal.App.4th 1330
The PEOPLE, Plaintiff and Respondent,
v.
Alberto Francisco BRICENO, Defendant and Appellant.
The People, Plaintiff and Respondent,
v.
Evaristo Landin, Defendant and Appellant.
Nos. G029525, G029607.
Court of Appeal, Fourth District, Division Three.
June 20, 2003.
As Modified on Denial of Rehearing July 21, 2003.
Review Granted September 24, 2003.
*913 Leslie Conrad, under appointment by the Court of Appeal, for Defendant and Appellant Alberto Briceno.
Frederick L. McBride, for Defendant and Appellant Evaristo Landin.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Gil P. Gonzalez and Ronald A. Jakob, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]

OPINION
ARONSON, J.
A jury convicted Alberto Briceno and Evaristo Landin of four counts of second degree robbery and street terrorism and found allegations the robberies were committed for the benefit of a criminal street gang were true. The court found Briceno had suffered two prior serious felony convictions and a prior prison term. Defendants complain of the admission of gang expert testimony, instructional error, and the insufficiency of the evidence to support various convictions and enhancements.
Because a criminal street gang enhancement (Pen.Code, § 186.22, subd. (b)(1)) cannot be used to transform an unenumerated offense into a "serious" felony, we agree the prosecution failed to prove Briceno suffered a "strike" prior under the Three Strikes law, and remand for a new sentencing hearing. For the reasons set forth below, we affirm the balance of the judgment.

I
Briceno and Landin launched a grinchly crime wave on Christmas Day 2000, divesting four individuals of their cash and property. Around 1:00 a.m., defendants stopped their first victim, Ross Lambert, at gunpoint outside a Costa Mesa bar. Lambert relinquished the cash in his pocket ($10.50). A sharp object was placed against his neck when one of the culprits demanded more loot. Lambert saw the men decamp in a Cadillac, recorded the license number, and contacted the police.
Approximately 90 minutes later, Richard Jess saw a parked sedan with its headlights on as he walked into the Comfort Inn parking lot. Approaching from the rear, Landin put his arm around Jess's neck, stuck a gun into his ribs, and demanded his valuables. As the sedan crept forward into an adjoining parking lot, Landin searched the victim for loot, but Jess had only $2 on his person. Jess saw Landin, then wearing designer jeans and a stocking cap, run over and get inside the sedan.
Within an hour, Judy Yonamine arrived at her Garden Grove residence. A car passed as she was unloading some items from her car trunk, then stopped, with its engine and lights still running. The front seat passenger, Landin, emerged and asked for money, but Yonamine indicated she had none. Landin produced a handgun and took her wallet, containing $25. He ran back to the car and it sped away. Minutes later, the scenario repeated itself. This time, Landin approached Jesus Mendoza *914 as he was unloading his van in Anaheim. Mendoza surrendered his wallet, and $18 in cash, when Landin pointed a pistol at him.
Anaheim Police Officer Raymond Drabek stopped the Cadillac as it made a U-turn on Harbor Boulevard near Disneyland. Landin was in the passenger seat and Briceno was behind the wheel. The car and license plate number matched the description furnished by the robbery victims; $300 in cash and a pellet gun were found under the front passenger seat. A beanie cap worn by one of the perpetrators and identified by one of the victims was also found inside the Cadillac. Small amounts of cash were found on both defendants.
Waiving his Miranda rights, Landin agreed to talk to an investigator. He admitted approaching Jess and Mendoza with a BB gun and taking money from them. Landin and Briceno planned to split the proceeds "50/50" and use the money for Christmas gifts. Landin also admitted his membership in the "Hard Times" gang, and sported tattoos with that name on his forearms. During a second interview, Landin admitted robbing Lambert but denied using a knife in the commission of the crime.
Based on his training and experience, the prosecution's gang expert, Investigator Peter Vi, confirmed Hard Times was a criminal street gang, some 200 members strong, and its turf was a three-block area in Garden Grove. The gang's primary activities included attempted murder, robberies, possession and use of firearms, and graffiti. Landin was an active member of the Hard Times gang and the Christmas Day robberies were committed for the benefit of that group. According to Vi, these crimes enhanced not only the status of the two participants, but of the entire gang as well. That Landin may have had a secondary motive (to get cash to purchase presents) was of no moment.

II-III[**]

IV
At the court trial on the priors, the information was amended by interlineation to allege Briceno suffered a January 5, 1998 conviction for violations of Penal Code sections 12021, subdivision (a)(1)[2] (felon in possession of a firearm) and 12025, subdivision (b)(3) (active participant in criminal street gang found carrying a concealed firearm).[3] (Orange County Super. Ct. No. 97CF3057). At trial the prosecutor produced, without objection, certified copies of state prison records documenting Briceno's guilty plea to both crimes. Briceno also admitted criminal street gang enhancements as to both offenses.
Briceno's prior convictions were alleged as "serious or violent felonies" under sections 667 and 1170.12. Section 667, subdivision (a)(1) mandates a five-year sentence enhancement for a repeat offendera defendant convicted of a "serious felony" offense (listed in section 1192.7, subdivision (c)) who has been previously convicted of a serious felony.[4] Similarly, section 1170.12 *915 (the Three Strikes law) requires increased punishment when a defendant convicted of any felony has been previously convicted of either a serious felony under section 1192.7, subdivision (c), or a "violent" felony under section 667.5, subdivision (c).
Briceno argues the section 12021 and 12025 convictions do not qualify as serious or violent felonies. Along these lines, he notes these offenses are not among the enumerated serious felonies listed in section 1192.7, subdivision (c), or classified as "violent" felonies under section 667.5, subdivision (c).[5]
Based on the plain language of the statutes, we agree neither of these crimes is an enumerated offense. But the Attorney General argues it is possible the offenses might qualify as serious or violent felonies if the "conduct" underlying these crimes fits within the description of criminal conduct set forth in the relevant statutes. In this regard, the Attorney General relies on section 1192.7, subdivision (c)(28), which states the term "serious felony" includes "any felony offense, which would also constitute a felony violation of Section 186.22." Based on this provision, the People argue the priors qualify as serious felonies because they were accompanied by section 186.22, subdivision (b)(1) enhancements. Such an enhancement, we are told, is sufficient to prove that the prior offense involved conduct qualifying it as a serious felony under section 1192.7, subdivision (0(28).
Briceno's 1998 guilty plea included a section 186.22, subdivision (b)(1) enhancement. Rule 4.405(c) of the California Rules of Court defines the term "enhancement" as "an additional term of imprisonment added to the base term." Put another way, it is a penalty provision, not a substantive offense: "[A] penalty provision prescribes an added penalty to be imposed when the offense is committed under specified circumstances. A penalty provision is separate from the underlying offense and does not set forth elements of the offense or a greater degree of the offense charged." (People v. Bright (1996) 12 Cal.4th 652, 661, 49 Cal.Rptr.2d 732, 909 P.2d 1354; People v. Wims (1995) 10 Cal.4th 293, 304, 41 Cal.Rptr.2d 241, 895 P.2d 77 ["California courts have long recognized that `[a]n enhancement is not a separate crime or offense'"].) Thus, sentence enhancements are not the same as, and do not function as a substitute for, substantive offenses. In fact, "[enhancements typically focus on an element of the commission of the crime or the criminal history of the defendant which is not present for all such crimes and perpetrators and which justifies a higher penalty than that prescribed for the offenses themselves." (People v. Hernandez (1988) 46 Cal.3d 194, 207, 208, 249 Cal.Rptr. 850, 757 P.2d 1013, italics added.) In sum, "`[e]nhancements are not offenses, they are punishments ...."' (People v. Bracamonte (2003) 106 Cal.App.4th 704, 711, 131 Cal. Rptr.2d 334, italics added.)
Section 186.22, subdivision (b)(1) calls for increased punishment where the underlying offense is committed for the benefit of, and with the specific intent to promote, a criminal street gang. It does *916 not set forth elements of the underlying offense (§ 186.22, subd. (a)) or divide that offense into degrees. In other words, California law leads to the following inescapable conclusion: A section 186.22, subdivision (b)(1) enhancement cannot be used to bootstrap an unenumerated offense into a "serious" felony for purposes of the Three Strikes law.
Citing People v. Haykel (2002) 96 Cal. App.4th 146, 116 Cal.Rptr.2d 667 (Haykel,) the Attorney General argues section 1192.7, subdivision (c)(28) makes no specific distinction between substantive offenses and enhancements under section 186.22. In Haykel, a panel of this court held an assault by means of force likely to produce great bodily injury is not a "serious" felony as defined by section 1192.7, subdivision (c)(31). That particular subdivision explains the term "serious" felony includes an "assault with a deadly weapon, firearm, machinegun, assault weapon, or semiautomatic firearm or assault on a peace officer or firefighter, in violation of Section 245."
Given the plain language used, this court concluded there was nothing ambiguous or unclear in the statute, as it clearly did not include an assault by means of force likely to produce great bodily injury. Rejecting an argument that Proposition 21 voters intended to drastically expand the list of serious felonies that could be invoked as strikes, the panel compared the language of section 1192.7, subdivision (c)(31)listing some, but not all, violations of section 245with contemporaneously enacted subdivision (c)(40), which unambiguously declares "any violation of Section 12022.53" to be a serious felony. (Italics added.) Our court saw it this way: "That similar language is absent from section 1192.7, subdivision (c)(31), declaring any violation of section 245 a serious felony, demonstrates an intent not to incorporate the entire section." (Haykel, supra, 96 Cal. App.4th at p. 150, 116 Cal.Rptr.2d 667.)
The Attorney General argues "[s]ection 1192.7, subdivision (c)(28)[ ] was added by the electorate as part of Proposition 21. [Citation.] The voters designated any offense constituting a felony under section 186.22 to be a serious felony." As the Attorney General sees it, the wording of section 1192.7, subdivision (c)(28) is "nearly identical" to subdivision (c)(40), and that statute should be interpreted in the same fashion. We are not so persuaded. Unlike subdivision (c)(40), the plain language of subdivision (c)(28) does not make any violation of section 186.22 a serious felony. That subdivision specifically indicates a "serious" felony is "any felony offense, which would also constitute a felony violation of Section 186.22." Again, as Haykel explains, had the drafters of the initiative intended that all violations of section 186.22 qualify as "serious" felonies, "they were certainly well aware of how to say so, but did not." (Haykel, supra, 96 Cal. App.4th at p. 150, 116 Cal.Rptr.2d 667.)
As if this were not enough, the Attorney General's argument is derailed when his interpretation is compared with the language in section 186.22, subdivisions (b)(1)(B) and (C). Subdivision (b)(1)(B) provides that "If the felony is a serious felony, as defined in subdivision (c) of Section 1192.7, the person shall be punished by an additional term of five years." Subdivision (b)(1)(C) similarly states, "If the felony is a violent felony, as defined in subdivision (c) of Section 667.5, the person shall be punished by an additional term of 10 years."
*917 As further support for the notion there is no distinction between enhancements and convictions, the Attorney General cites section 1192.7, subdivisions (c)(8) ["any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice, or any felony in which the defendant personally uses a firearm"], (c)(23) ["any felony in which the defendant personally used a dangerous or deadly weapon"], and (c)(40) ["any violation of Section 12022.53," an enhancement punishing the discharge of firearm]. The difference is that these subdivisions describe conduct, as opposed to other subdivisions, like (c)(28), which describe crimes.
Based on this analysis, we are forced to conclude there was insufficient evidence Briceno's prior convictions qualified as serious felonies under the Three Strikes law or violent felonies under sections 667, subdivision (a)(1) and 667.5, subdivision (c). Accordingly, the matter must be remanded for resentencing.

V[***]

DISPOSITION
The true finding as to the allegation that Briceno suffered a 1998 conviction under the Three Strikes law and section 667, subdivision (a)(1) is reversed, his sentence is vacated, and the matter is remanded for a new sentencing hearing. In all other respects, the judgment is affirmed.
WE CONCUR: RYLAARSDAM, Acting P.J, and FYBEL, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III, and V.
[**] See footnote *, ante.
[2] All further statutory references are to the Penal Code.
[3] Section 12025, subdivision (b)(3) makes it a felony offense to carry a concealed firearm "[w]here the person is an active participant in a criminal street gang, as defined in subdivision (a) of Section 186.22
[4] Section 667, subdivision (a)(1) reads, "In compliance with subdivision (b) of Section 1385, any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively."
[5] Section 1170.12, subdivision (b) states, "for the purposes of this section, a prior conviction of a felony shall be defined as: [¶] (1)[a]ny offense defined in subdivision (c) of [s]ection 667.5 as a violent felony or any offense defined in subdivision (c) of [s]ection 1192.7 as a serious felony in this state." Section 667.5, subdivision (c) enumerates 23 offenses defined as "violent felonies." Similarly, section 1192.7, subdivision (c) specifies 42 "serious" felonies.
[***] See footnote *, ante.