68 Cal.Rptr.3d 610 (2007)
157 Cal.App.4th 277
The PEOPLE, Plaintiff and Respondent,
v.
HUI SUN, Defendant and Appellant.
No. B194690.
Court of Appeal of California, Second District, Division Four.
November 28, 2007.
*611 Eric R. Larson, San Diego, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Steven D. Matthews, Supervising Attorney General and Ryan B. McCarroll, Deputy Attorney General for Plaintiff and Respondent.
Certified for Partial Publication.[*]
MANELLA, J.
Appellant Hui Sun, convicted of one count of second degree murder and one count of attempted murder, appeals his convictions and aspects of his sentence, contending: (1) prosecutorial misconduct influenced the jury's decision to convict him of murder rather than manslaughter; (2) the trial court erred in imposing and staying rather than striking various sentence enhancements; (3) the court erred in failing to award presentence custody credits for time appellantwho attempted suicide after shooting his two victimsspent in the hospital prior to his arrest; (4) the court erred in failing to award an extra day of credit for 2004, a leap year; and (5) the abstract of judgment contains numerous errors, including failure to award any presentence custody credits and miscalculation of the sentence. Respondent concedes the latter two points.
We conclude first, that although the prosecutor misstated the law in closing argument, the court correctly handled the situation by admonishing the jury to follow the instructions rather than counsel's argument. Second, the enhancement imposed under Penal Code section 12022.7, subdivision (e) should have been stricken.[1] Third, appellant was not entitled to presentence custody credits prior to his arrest. Accordingly, we reverse in part and remand for the section 12022.7, subdivision (e) enhancement to be stricken, for the *612 extra day to be credited, and for the errors in the abstract of judgment to be corrected.

FACTUAL AND PROCEDURAL BACKGROUND

I

Information
Appellant was charged by information with the murder of his mother-in-law, Ai Guo (count one), and the attempted willful, deliberate, premeditated murder of his wife, Jie Xu (count two). With respect to both counts, it was further alleged that appellant personally and intentionally discharged a firearm which caused great bodily injury within the meaning of Penal Code section 12022.53, subdivision (d); that he personally and intentionally discharged a firearm within the meaning of section 12022.53, subdivision (c); and that he personally used a firearm within the meaning of section 12022.53, subdivision (b). With respect to count two, it was alleged that appellant personally inflicted great bodily injury upon Xu under circumstances involving domestic violence within the meaning of section 12022.7, subdivision (e).[2]

II

Verdict and Sentencing
Appellant was tried twice. In the first trial, the jury acquitted him of first degree murder on count one, but deadlocked over whether he was guilty of second degree murder or voluntary manslaughter. The jury was also deadlocked on count two, split between attempted murder and attempted voluntary manslaughter.
At the second trial, the jury found appellant guilty of second degree murder and attempted willful, deliberate, premeditated murder. The second jury also found all the special allegations true.
The court sentenced appellant to 72 years to life in prison calculated as follows: For count one (second degree murder) the court sentenced appellant to 15 years to life, plus 25 years to life for the section 12022.53, subdivision (d) enhancement, for a total of 40 years to life. For count two (attempted willful, deliberate, premeditated murder) the court sentenced appellant to a consecutive term of life in prison with the possibility of parole with a mandatory minimum of 7 years, plus 25 years to life for the section 12022.53, subdivision (d) enhancement, for a total of 32 years to life. The court imposed and stayed sentence on the remaining enhancements.

III

Evidence at Trial

A. Prosecution Evidence
According to witnesses who testified for the prosecution at trial, appellant was born in China, where he served in the military and in 1997, married Jie Xu.[3] Appellant and Jie came to the United States in 1998. They lived in an apartment in Alhambra and had two children. Jie's parents, Ai Guo and Qing Xu, came from China to live with them in 2000 and 2002 respectively.[4]
*613 In September 2003, Jie discovered that appellant was having an affair. She said she wanted a divorce, and appellant agreed. Between September and December 2003, appellant moved in and out of the apartment, staying away for a few days each time. During the times he was at the apartment, he slept in the living room.
According to Jie, appellant had an "explosive" temper. In 1999, when Jie was pregnant, he kicked her. Qing sometimes heard appellant and Jie arguing, and once observed an injury on Jie's wrist.
In December 2003, during an argument over money, appellant kicked Jie's leg and hit her in the face. He also took one of the guns out of his gun locker, but did not directly threaten her with it.[5] Jie called the police, but did not tell them appellant had struck her because she was concerned about getting him in trouble due to his immigration status.[6] Jie called the police on two other occasions in December 2003. On the first, appellant had called her from outside the apartment and asked her to come talk to him. Jie felt apprehensive about meeting him alone. Jie called police on the second occasion because appellant had taken Jie's passport and the passport of one of their children.
Jia Xiang Wang, appellant's co-worker, testified that on December 24, 2003, appellant asked him for help following someone. Appellant did not say who. Wang, driving his own car, followed appellant to a location in Chinatown where they both parked and waited for approximately three hours. Appellant then told Wang to leave. Police officers later ascertained that the location where appellant and Wang parked that day was one block from Jie's place of employment.
On December 27, 2003, Jie was out shopping with Guo and the children. Appellant called and told her to come home because he had cooked dinner. When everyone arrived and sat down to eat, appellant poured himself half a glass of Chinese wine, apologized to Jie's parents, and drank some or all of the alcohol. Appellant next apologized to Jie, made a toast to their reconciliation, and drank another glass or half glass of the alcoholic beverage. Jie's parents and the children left the room so that Jie and appellant could be alone. Appellant seemed calm. He did not appear intoxicated. Appellant asked Jie to reconcile, but she refused, saying "[her] heart ha[d] died." She suggested that they give each other some time and space. Appellant had tears in his eyes.
Jie left the table and went into her parents' bedroom. Appellant followed. He still seemed calm. Guo, who was in the bedroom at the time, suggested that appellant give Jie some time to think things over.[7] Appellant walked into the bedroom he and Jie had shared, and Jie followed. When she got there, appellant was holding a gun in his right hand, behind his back. Jie tried to leave, but appellant blocked her way. Jie saw Guo in the doorway, and yelled at her to call the police. Guo grabbed appellant's left arm and asked him what he was doing. Appellant, still appearing calm, fired the gun at Jie, striking her in the face. He then shot Guo in the head and turned the gun on *614 himself. Seeing Guo and appellant lying on the floor, Jie tried to call 911, but had difficulty communicating with the operator due to her injury.
Qing, who did not speak English, went to the apartment of a neighbor, Antoinette Rossi, and persuaded her to call 911. Rossi went to the family's apartment and saw Jie slumped down with blood running from her head.[8] Guo was lying on the floor, not moving. Appellant was on the floor with a gun near his right hand, and a wound in his head.
Guo's autopsy showed stippling, which indicates the gun was only a few inches from her face when she was shot. The gun used in the incident required five pounds of pressure to fire.

B. Defense Evidence
The defense called a toxicology expert who testified that the alcoholic beverage appellant drank that night was 112 proof, which means it was 56 per cent alcohol. He estimated that appellant's blood alcohol level at the time of the shooting was between .17 and .33. A person with a .33 level would be confused and disoriented and would experience a loss of inhibitions. At any point within that range, the drinker would experience an impact on critical judgment and the ability to perceive and analyze reality. Some drinkers with that level of alcohol in their system would become happy, some would become quiet, and others would become angry. A person with a high tolerance for alcohol might appear normal, but the mental effects would still be present.[9]
C.-D.[**]

DISCUSSION

I[**]

II

Enhancements
Appellant contends the court erred in imposing but staying sentence on the enhancements under section 12022.53, subdivisions (b) and (c) and section 12022.7, subdivision (e). Whether enhancements under these statutes should be stricken or stayed was resolved by this Court in People v. Bracamonte (2003) 106 Cal.App.4th 704, 131 Cal.Rptr.2d 334. There, we addressed a discrepancy in the language of subdivisions (f) and (h) of section 12022.53. Subdivision (f) provides: "Only one additional term of imprisonment under this section shall be imposed per person for each crime." It further states that firearm enhancements under section 12021.5, 12022, 12022.3, 12022.4, and 12022.5 "shall not be imposed on a person in addition to an enhancement imposed pursuant to this section" and that enhancements for great bodily injury under section 12022.7, 12022.8, and 12022.9 "shall not be imposed on a person in addition to an enhancement imposed pursuant to subdivision (d)." Subdivision (h) provides: "[T]he court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section." In cases such as the present one, where multiple enhancements were alleged and found to be true by the jury, the language of subdivision (f) could be read to preclude *615 the usual practice of imposing but staying all but one of such enhancements, while at the same time, subdivision (h) appears to forbid striking any of them.
In Bracamonte, we harmonized these "seemingly conflicting provisions" by concluding that where multiple enhancements were alleged and found true under section 12022.53, that provision requires the trial court (1) to impose the applicable enhancement for each firearm discharge and use allegations found true under section 12022.53 and stay the execution for all but the one imposing the longest prison term, and (2) to strike enhancements found true under the other provisions listed in subdivision (f). (People v. Bracamonte, supra, 106 Cal.App.4th at pp. 712-714, 131 Cal. Rptr.2d 334.) Bracamonte was followed in People v. Carrasco (2006) 137 Cal.App.4th 1050, 40 Cal.Rptr.3d 768, where enhancements under both subdivision (b) and subdivision (c) of section 12022.53 were found true. The court held that the subdivision (b) enhancement should have been imposed and stayed rather than stricken. (137 Cal.App.4th at pp. 1061-1062, 40 Cal. Rptr.3d 768.) Appellant contends Bracamonte and Carrasco were wrongly decided, and points out that the Third District has since concluded that excess enhancements under section 12022.53 should be stricken. (People v. Gonzalez (2006) 146 Cal.App.4th 327, 53 Cal.Rptr.3d 104, review granted Mar. 14, 2007, S149898.)
Respondent attacks a different aspect of the Bracamonte holdingthe conclusion that the non-section 12022.53 enhancements listed in subdivision (f) should be stricken when a section 12022.53 enhancement is imposed. Respondent contends that part of Bracamonte's holding has been undermined by a change in the Rules of Court. Bracamonte found that rule 4.447which provides that trial courts should stay, rather than strike, enhancementsdid not apply to indeterminate life terms and that, in any event our interpretation of the applicable statutes took precedence over a rule of court. (People, v. Bracamonte, supra, 106 Cal.App.4th at pp. 710-711, 131 Cal.Rptr.2d 334; see People v. Felix (2000) 22 Cal.4th 651, 657-659, 94 Cal.Rptr.2d 54, 995 P.2d 186 [explaining that sentences such as "25 years to life" or "life with the possibility of parole" are indeterminate].) Subsequently, the Advisory Committee added a comment to rule 4.447, stating: "This rule applies to both determinate and indeterminate terms." (Advisory Com. com., rule 4.447.)
We are persuaded by neither appellant's argument nor respondent's. The authority relied on by appellant has been accepted for review by the Supreme Court and is no longer citable. The comment added to rule 4.447 cannot alter our interpretation of the statutes.[14] We will continue to adhere to the views expressed in Bracamonte until advised to do otherwise by the Supreme Court, Accordingly, we conclude the court erred in failing to strike the section 12022.7, subdivision (e) enhancement, but correctly imposed and stayed the section 12022.53 subdivisions (b) and (c) enhancements.

*616 III[***]

DISPOSITION
The sentence on the section 12022.7, subdivision (e) enhancement is reversed. The matter is remanded. Upon remand, the trial court is directed to strike the section 12022.7, subdivision (e) enhancement and to prepare and forward to the Department of Corrections an amended abstract of judgment reflecting the actual sentence imposed, including the 1008 days of presentence custody credits, the stay of the section 12022.53, subdivision (b) enhancement, and the total sentence of 72 years to life. In all other respects, the judgment is affirmed.
We concur: EPSTEIN, P.J., and SUZUKAWA, J.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts IIIC and HID of the Factual and Procedural Background and parts I and III of the Discussion.
[1] Statutory references herein are to the Penal Code.

Section 12022.53, subdivision (b) provides a 10-year sentence enhancement for a person who uses a firearm in the commission of specified felonies. Subdivision (c) provides a 20-year sentence enhancement for a person who discharges a firearm in the commission of one of those same felonies. Subdivision (d) provides a 25-year to life sentence enhancement for a person who, in the commission of one of the specified felonies, "personally and intentionally discharges a firearm and proximately causes great bodily injury."
[2] Section 12022.7, subdivision (e) provides that any person "who personally inflicts great bodily injury under circumstances involving domestic violence in the commission of a felony or attempted felony" shall be punished by an additional and consecutive term of imprisonment of between three and five years.
[3] Because Jie Xu and her father, Qing Xu, who also testified, share a surname, to avoid confusion we refer to them by their first names.
[4] Guo's name is sometimes spelled "Gao."
[5] Appellant kept two guns in a small metal cabinet in the bedroom closet. Only he had the key.
[6] A police expert in domestic violence explained that victims commonly minimize the violence when speaking to police.
[7] During this time, Qing was in the bathroom. He overheard appellant and Jie arguing. He heard Guo say "what are you doing?" and then heard three shots, but did not see the crime.
[8] Rossi did not hear any loud voices or arguing prior to the shooting. She had heard appellant arguing with his wife on four or five prior occasions.
[9] Jie and Qing testified that appellant was a regular drinker, who had a drink nearly every day after work and could drink several beers with no noticeable effect.
[**] See footnote *, ante.
[14] The argument raised by respondent was rejected in the recent case of People v. Warner (2007) 155 Cal.App.4th 57, 65 Cal.Rptr.3d 711, in which the Attorney General urged the court to disregard Bracamonte's holding as it applied to non-section 12022.53 enhancements and instead follow rule 4.447. The court refused: "[R]ules of court promulgated by the Judicial Council may not conflict with statutes, so if a statute and a rule of court are inconsistent] the statute governs." (People v. Warner, supra; 155 Cal.App.4th at p. 63, 65 Cal.Rptr.3d 711.)
[***] See footnote *, ante.