Filed 1/15/14  P. v. Stewart CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

CHAD ELLIOT STEWART,

    Defendant and Appellant.

E057199

(Super.Ct.No. RIF150237)

OPINION

APPEAL from the Superior Court of Riverside County.  Gary B. Tranbarger, Judge.  Affirmed as modified with directions.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Chad Elliot Stewart of two counts of false imprisonment (Pen. Code, § 237, subd. (a), counts 1 & 2),[1] robbery (§ 211, counts 3 & 5), and active participation in a criminal street gang (§ 186.22, count 4). As to counts 1, 2, 3, and 5, the jury also found true the allegations that defendant personally used a firearm during the commission of the offenses. (§ 12022.53, subd. (b).) At a bifurcated hearing, a trial court found that defendant had two prior strike convictions. (§§ 667, subds. (c) & (e)(2)(A), 1170.12, subd. (c)(2)(A).) The court sentenced him to state prison for a determinate term of 13 years four months, plus an indeterminate term of 50 years to life. The sentence consisted of 25 years to life on count 3; 25 years to life on count 5 to run consecutive to the term on count 3; 25 years to life on counts 1, 2, and 4 to run concurrent with the terms on counts 3 and 5; plus a consecutive 10 years on the firearm enhancement on count 3; and three years four months on the firearm enhancement on count 5.

On appeal, defendant contends that: (1) there was insufficient evidence to support the conviction on count 4; (2) the sentence on count 4 should be stayed pursuant to section 654; and (3) the sentences on counts 1 and 2 should be stayed pursuant to section 654. The People concede, and we agree, that the sentence on count 4 should be stayed. We also find that the sentences on counts 1 and 2 should be stayed under section 654, and

---

[1] All further statutory references will be to the Penal Code, unless otherwise noted.

2

that the trial court should have sentenced defendant to a consecutive 10 years on the firearm enhancement on count 5. Otherwise, we affirm.

FACTUAL BACKGROUND

*Prosecution Evidence*

At approximately 8:00 p.m. on November 18, 2008, Fabiola Mendoza and Silvester Olivera Gonzalez[2] were working at La Favorita Market. Two men entered the market wearing ski masks and carrying firearms. Olivera was working at the meat counter, and one of the individuals, later identified as defendant, pointed a gun at him and then jumped toward him. Defendant took Olivera to the back storage room, holding a gun to his head. In the back room, defendant took wallets and cell phones from Olivera and another employee. Mendoza was working at the cash register when defendant's cohort walked up to the cash register and pointed his gun at her. He told her to take the money out of the cash register and put it in a bag. After that, he told her to go to the office, where the safe was located. Defendant entered the office, holding a gun, at the same time Mendoza and defendant's cohort entered. His cohort was still pointing the gun at Mendoza and told her to take the money out of the safe. She said all the money was there. Defendant grabbed the money out of the safe. Over $9,000 was taken. The robbery was recorded on the store's surveillance system.

---

[2] The record shows that the victim's name was Silvester Olivera Gonzalez, but he was referred to as Mr. Olivera during the trial. For the sake of consistency, this opinion will also refer to him by the name Olivera.

At trial, Riverside County Sheriff's Detective Thomas Salisbury testified that he responded to a call at La Favorita Market at around 11:00 p.m. on November 18, 2008. He viewed the surveillance video and noted that the suspect who went to the meat counter wore a blue jacket with a reflective stripe on the back, and designer blue jeans that had a distinct pattern stitched on the pocket. The area where the suspect jumped over the meat counter was dusted for fingerprints. The fingerprints were examined and identified as belonging to defendant.

Detective Salisbury had Officer Pomeroy review the videotape with him. Officer Pomeroy had previously spoken with defendant numerous times and was familiar with his voice and looks. She listened to all of the available audio from the incident and said the voice sounded like defendant. She also saw the suspect in the video who jumped the meat counter and said he matched the description of defendant. She further noted that defendant's cohort called defendant "Trig." A crime analyst recognized that name and believed the suspect was defendant. Officer Pomeroy arranged a meeting with defendant the next day. Defendant showed up wearing the exact same pants that the suspect in the video was wearing. Defendant had two cell phones on him, as well as twenty-two $5 bills and three $1 bills. Defendant was arrested.

Officer Dario Hernandez, a gang expert, testified that defendant had a tattoo that read, "Perris MVGC," which stood for Mead Valley Gangster Crips—a local gang. He also had a tattoo on his arm that read "MVGC." The primary activities of the gang were assaults and robberies. Officer Hernandez explained that a moniker was a nickname that

4

gang members gave to each other, so that they did not call each other by their real names. Most gang members had monikers that the other gang members called them. Officer Hernandez testified that it was commonplace for gang members to commit crimes with other members of their gang. Two members of the MVGC had recently been convicted of assault and attempted murder. Officer Hernandez testified that those convictions were important because they showed a pattern of criminal activity and established the MVGC as a criminal street gang. Officer Hernandez knew defendant from prior contacts, and said that his moniker was "Trig" or "Trigga." Defendant had admitted to law enforcement in previous contacts that he was a member of the MVGC. Officer Hernandez opined that defendant was an active member of that gang.

As to this specific incident, Officer Hernandez testified that these offenses were beneficial to the gang. He noted that during the robbery, defendant was called by his gang moniker. Furthermore, the robbery enhanced defendant's status within the gang. The day after the robbery, defendant's cell phone contained pictures of the money that was stolen. Officer Hernandez testified that such pictures were a form of bragging, in that gang members take pictures of money they stole to show off to other gang members what they did.

ANALYSIS

## I.  There Was Sufficient Evidence to Support Defendant's Conviction in Count 4 for Active Participation in a Criminal Street Gang

Defendant contends that there was no evidence that his accomplice was a gang member and, thus, the evidence was insufficient to convict defendant of active participation in a criminal street gang.  We disagree.

### A.  *Standard of Review*

"In deciding the sufficiency of the evidence, we ask whether "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  [Citation]  Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  [Citation.]"  (*People v. Maury* (2003) 30 Cal.4th 342, 403 (*Maury*).)

"In cases in which the People rely primarily on circumstantial evidence, the standard of review is the same.  [Citations.]  'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable

6

doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. [Citations.]' [Citation.]" (*People v. Thomas* (1992) 2 Cal.4th 489, 514 (*Thomas*).)

B. *The Evidence Was Sufficient*

Section 186.22, subdivision (a), provides that "[a]ny person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished . . . ." The elements of this offense are: (1) active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; (2) knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and (3) the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1130 (*Rodriguez*).) "[T]o satisfy the third element, a defendant must willfully advance, encourage, contribute to, or help *members* of his gang commit felonious criminal conduct. The plain meaning of section 186.22[, subdivision] (a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member. [Citation.]" (*Id*. at p. 1132.) In other words, "with section 186.22[, subdivision] (a), the Legislature sought to punish gang members who act[] *in concert* with other gang members in committing a felony . . . ." (*Id*. at p. 1138.)

Here, defendant takes issue with the third element and argues that there was no evidence that the individual with whom he committed the current offenses was a gang member. However, there was sufficient evidence from which the jury could conclude that defendant's accomplice was a gang member. Defendant, an active member of MVGC, committed two counts of robbery. The primary activities of the MVGC gang were assaults and robberies. The current crimes were committed in an area controlled by MVGC. Defendant committed the crimes in his gang's territory, with an accomplice. Officer Hernandez testified that it was common for gang members to commit crimes in their gang's territory, *with fellow gang members*. Officer Hernandez also explained that a moniker is a nickname that gang members give each other. Defendant's accomplice called defendant by his gang moniker, while committing the current crimes.

Viewing the evidence in the light most favorable to the prosecution, as we must, we are satisfied that the evidence and circumstances reasonably justified the jury's implied finding that defendant's accomplice was a fellow gang member. Accordingly, there was sufficient evidence to support the jury's conclusion that defendant was an active participant in a criminal street gang, within the meaning of section 186.22, subdivision (a). (*Thomas*, *supra*, 2 Cal.4th at p. 514; *Rodriguez*, *supra*, 55 Cal.4th at p. 1138.)

II. The Sentence on Count 4 Should Be Stayed Under Section 654

Defendant argues that because there was no criminal conduct establishing his guilt of being an active gang participant (count 4), other than the false imprisonment and

robbery offenses, the court should have stayed the sentence on count 4 pursuant to section 654. The People concede, and we agree.

Section 654, subdivision (a), provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 precludes multiple punishment not only for a single act, but also for an indivisible course of conduct. (*People v. Hester* (2000) 22 Cal.4th 290, 294.) "The purpose of this statute is to prevent multiple punishment for a single act or omission, even though that act or omission violates more than one statute and thus constitutes more than one crime." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312 (*Hutchins*).)

Section 654 "'precludes multiple punishment for both (1) gang participation, one element of which requires that the defendant have "willfully promote[d], further[ed], or assist[ed] in any felonious criminal conduct by members of th[e] gang" [citation], and (2) the underlying felony that is used to satisfy this element of gang participation.' [Citation.]" (*People v. Mesa* (2012) 54 Cal.4th 191, 197-198 (*Mesa*).)

Here, defendant was convicted of both active gang participation *and* the underlying felonies that were used to "'transform[] mere gang membership—which, by itself, is not a crime—into the crime of gang participation.' [Citation.]" (*Mesa, supra*, 54 Cal.4th at p. 197.) Defendant's sentence on count 4 violates section 654 because it punishes him a second time either for the robbery offenses or for the false imprisonment

9

offenses, which were the underlying offenses used to convict him of active gang participation. Accordingly, his sentence on count 4 for active participation in a gang must be stayed. (See *id*. at p. 200.)

III. The Sentences on Counts 1 and 2 Should Be Stayed Pursuant to Section 654

Defendant argues that the sentences on counts 1 and 2 should be stayed pursuant to section 654 because the false imprisonments of Mendoza and Olivera in counts 1 and 2 were committed to facilitate the robberies in counts 3 and 5. The People argue that the court properly imposed concurrent sentences on counts 1 and 2 because defendant entertained multiple criminal objectives against multiple victims. We agree with defendant.

Section 654 "bars multiple punishments for separate offenses arising out of a single occurrence where all of the offenses were incident to one objective. [Citation.]" (*People v. Lewis* (2008) 43 Cal.4th 415, 519.) With regard to Mendoza, the false imprisonment (count 1) and robbery (count 3) offenses arose out of a single occurrence where both offenses were committed pursuant to the objective of taking the money from the safe. Defendant's accomplice took Mendoza from the cash register to the office, at gunpoint. When Mendoza entered the office, defendant entered as well. Defendant and his accomplice shut the office door behind them after Mendoza entered. The accomplice told Mendoza to take the money out of the safe. She said all the money was there, and defendant grabbed the money out of the safe. As the People concede, defendant "falsely imprisoned Mendoza at the store's office to carry out the criminal objective of robbing

10

the store's safe." The evidence reveals no other objective, and the People do not claim otherwise, with regard to the counts concerning Mendoza.

As to Olivera, the false imprisonment (count 2) and robbery (count 5) were committed pursuant to the single objective of robbing him of his personal belongings. Olivera testified that defendant jumped the meat counter, pointed a gun at him, grabbed him by his shirt at the base of his neck, and took him into the back storage room. Once they were there, defendant took his cell phone and wallet and then left him alone. The People argue that defendant falsely imprisoned Olivera "for the two criminal objectives of robbing [him] of his personal possessions, as well as robbing the store's safe." However, the record does not support this claim since it shows that once defendant robbed Olivera of his possessions, he left him alone. Defendant apparently then went to the office to join his accomplice and get the money from the safe.

The People appear be claiming that the multiple victim exception to section 654 applies here. However, the multiple victim exception is inapplicable. The multiple victim exception to section 654 essentially states that "when multiple victims are targeted by a *single episode* of violent criminal conduct, the perpetrator may be punished separately for the crimes committed against each victim." (*People v. Davey* (2005) 133 Cal.App.4th 384, 390, italics added.) Here, while there were multiple victims, Mendoza and Olivera were the victims of *separate* courses of conduct by defendant. Within those separate courses of conduct—the false imprisonment and robbery of Mendoza, and the

11

false imprisonment and robbery of Olivera—section 654 applies to prevent multiple punishment for a single occurrence.

Therefore, the sentences on count 1 (false imprisonment of Mendoza) and count 2 (false imprisonment of Olivera) should be stayed pursuant to section 654. We further note that the sentences on the gun-use enhancements attached to counts 1 and 2 also must be stayed. (*People v. Bracamonte* (2003) 106 Cal.App.4th 704, 709 ["Where the base term of a sentence is stayed under section 654, the attendant enhancements must also be stayed"], overruled in part on other grounds as stated in *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1130, fn 8.)

IV.  The Court Erred When Sentencing Defendant on the Gun-Use Enhancement

Attached to Count 5

The court sentenced defendant to an indeterminate term of 25 years to life on count 5. Instead of imposing a 10-year term for the attendant gun-use enhancement under section 12022.53, subdivision (b), the court imposed one-third of that term, or three years four months. We requested the parties to file supplemental briefs on the issue of whether the court erred in imposing one-third of the 10-year prison term prescribed in section 12022.53, subdivision (b). The parties agree that the court erred, and we concur. Section 1170.1, subdivision (a), limits the term imposed for enhancements attached to subordinate counts to one-third of the prescribed term. However, the section 1170.1 limits do not apply to enhancements attached to indeterminate terms. (*People v. Felix* (2000) 22 Cal.4th 651, 656.) Thus, the court here was required to impose the full 10-year

12

term on the section 12022.53, subdivision (b) gun-use enhancement attached to count 5. We will therefore modify the judgment to reflect the required term. (§ 1260.)

In sum, defendant's sentence will consist of 25 years to life on count 3; 25 years to life on count 5 to run consecutive to the term on count 3; 25 years to life on counts 1, 2, and 4, stayed pursuant to section 654; plus a consecutive 10 years on the gun-use enhancement on count 3 and 10 years on the gun-use enhancement on count 5.

## DISPOSITION

The judgment is modified such that the sentences on counts 1, 2, and 4, and their attendant section 12022.53, subdivision (b) enhancements, shall be stayed pursuant to section 654. The judgment is also modified to impose a consecutive 10-year term on the section 12022.53, subdivision (b) enhancement on count 5. The trial court is directed to prepare an amended minute order and abstract of judgment reflecting these modifications. The trial court is further directed to forward copies of the amended minute order and abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


HOLLENHORST          
                                                                                        J.

We concur:

RAMIREZ             
                        P. J.

CODRINGTON         
                        J.

13