# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALBERTO FRANCISCO BRICENO,
        *Petitioner-Appellant,*

v.

A. K. SCRIBNER, Warden,
        *Respondent-Appellee.*

No. 07-55665

D.C. No.
CV-05-00455-
MMM

OPINION

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted
August 8, 2008—Pasadena, California

Filed February 23, 2009

Before: Roger J. Miner,* Kim McLane Wardlaw, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Miner;
Partial Concurrence and Partial Dissent as to Part III by
Judge Wardlaw

---

*The Honorable Roger J. Miner, Senior United States Circuit Judge for
the Second Circuit, sitting by designation.

## COUNSEL

Vivian A. Fu, San Francisco, California, for the petitioner-appellant.

Ronald A. Jakob, Deputy Attorney General; Dane R. Gillette, Chief Assistant Attorney General; Gary W. Schons, Senior Assistant Attorney General (Edmund G. Brown, Jr., Attorney General for the State of California), San Diego, California, for the respondent-appellee.

**OPINION**

MINER, *Circuit Judge*:

I. *Introduction*

Alberto Francisco Briceno appeals from a judgment of the United States District Court for the Central District of California (Morrow, J.) denying his petition for a writ of habeas corpus. Briceno was convicted, following a jury trial, of four counts of second degree robbery and four counts of street terrorism in the Superior Court of Orange County. The jury also found that the robberies were committed for the benefit of a criminal street gang. Briceno pursued various challenges to his convictions in the California state courts and in the District Court. Ultimately, we granted a certificate of appealability as to two issues that are now before us to resolve: "(1) whether there is sufficient evidence to support the gang enhancement convictions for each robbery; and (2) whether the trial court erred by allowing the prosecution's expert to testify that the gang enhancement allegations were true." *See* 28 U.S.C. § 2253(c)(3). After setting forth the background facts, we analyze these issues in reverse order, answering both in the negative.

II. *Of the Crimes*

Briceno and Evaristo Landin robbed four individuals in Orange County on Christmas Day 2000 in what the California Court of Appeal aptly characterized as a "grinchly crime wave." *People v. Briceno*, 135 Cal. Rptr. 2d 912, 913 (Ct. App. 2003), *rev'd in part on other grounds*, 99 P.3d 1007 (Cal. 2004). The two gained little from their criminal forays. Both were members of the Hard Times Street Gang, and Landin's forearms were marked with the gang's tattoos. Their first victim was Ross Lambert, whom they held at gunpoint outside a bar in Costa Mesa at about 1:00 A.M. Lambert gave them the $10.50 he had in his pocket, and he felt a sharp

object placed against his neck when they demanded more. Lambert apparently had no more to give, and the two thieves drove away in a Cadillac, whose license plate Lambert recorded before contacting the police.

About an hour and a half later, Richard Jess noticed a parked sedan with its headlights on as he was walking through a Comfort Inn parking lot. Landin approached him from the rear, put his arm around Jess's neck, stuck a gun in his ribs, and demanded his valuables. Landin was able to extricate only $2.00 from Jess. During this time, the sedan was moving forward slowly in an adjoining parking lot. After the encounter, Jess saw Landin, who was wearing a stocking cap and designer jeans, run over to, and enter, the sedan.

Within the hour, Judy Yonamine arrived at her residence in Garden Grove. As she unloaded some items from the trunk of her car, another car pulled up and stopped, with its lights on and its engine still running. Landin emerged from the front passenger side and asked for money. When Yonamine said she had none, Landin produced a gun and took her wallet, which contained $25.00. Landin then ran back to the car, which sped away. Soon thereafter, Landin approached Jesus Mendoza, who was unloading his van in Anaheim. Mendoza gave up his wallet and $18.00 in cash when Landin pointed a pistol at him.

Landin was in the passenger seat and Briceno was behind the wheel when Anaheim Officer Raymond Drabek stopped the Cadillac sedan in which they were traveling as it made a U-turn on Harbor Boulevard near Disneyland. The car and license plate number matched the description provided by the robbery victims. Discovered under the front passenger seat were $300.00 in cash and a pellet gun. A beanie cap identified by one of the victims as worn by one of the perpetrators was found in the Cadillac, and small amounts of cash were found on both Landin and Briceno.

III. *Of the Trial*

At trial in the Superior Court, the prosecution sought to persuade the jury that the four robberies were committed for the benefit of, at the direction of, or in association with a criminal street gang, in order to call forth the enhanced penalties attendant to such a finding under California law. *See* CAL. PENAL CODE § 186.22(b). In this connection, counsel for the prosecution and counsel for Briceno agreed to the following oral stipulation, which was read to the jury:

> It is stipulated between the People and Defendant Briceno that Hard Times was a criminal street gang within the meaning of Penal Code Section 186.22 at all times relevant to this case.
>
> It is further stipulated that on 12/25/2[ ]000, that Defendant Briceno actively participated in the Hard Times criminal street gang with knowledge that the Hard Times members have engaged in a pattern of criminal gang activity, as defined in Penal Code Section 186.22. It is specifically not stipulated that Defendant Briceno aided and abetted another gang member in committing the crime of [robbery] on 12/25/2[ ]000.

Following the reading of the Stipulation, the court instructed the jury that the Stipulation applied to Briceno only and not to Landin, who was charged as a co-defendant and with whom Briceno was being jointly tried.

In support of the criminal street gang enhancement, the prosecution also presented the trial testimony of Peter Vi, who was employed in the position of Gang Investigator by the City of Garden Grove Police Department. Vi related his training and experience in the investigation of criminal street gangs and was offered as an expert witness by the prosecution. He testified that he had made several hundred arrests related to

gang membership and described the structure, operations, culture, and criminal activities of gangs generally.

Vi related the manner in which members are inducted into gangs, the conduct required of gang members, and their duties of loyalty to the gang. He also described the symbols of gang membership, including tattoos and "monikers" (i.e., names given to gang members by other members). With regard to the role of respect in gang culture, Vi testified:

> Respect means everything to a gang member. You know, he lives and dies by this term, respect. Respect means power and they gain respect by using violence to gain their power. And not only respect of self, for the gang, gain their status in the gang, increase their recruitment of gang members into that gang.

Vi testified that he was familiar with the activities of the Hard Times street gang, having been assigned to patrol its area of operations. He described Hard Times as a "territorial street gang" and as a "criminal street gang" that dominated a three-block neighborhood in Garden Grove. Vi estimated the total membership of the gang as approximately two hundred. According to Vi, gang members usually commit crimes with other gang members, and robbery is considered a status-enhancing act. The following question was put to Vi at trial:

> Now, if I were to ask you to assume that we had two Hard Times criminal street gang members, one driving, one in the passenger seat, drive to Costa Mesa on December 25th of the year 2000, and then at a little after 1:00 a passenger got out, pointed a pellet gun at one and robbed him of money and got back into the car and the two Hard Time members drove off, and then at a little after 2:30 A.M., in Anaheim, same two individuals with the same person driving approached a second person, passenger

getting out, pulling the pellet gun and, once again, robbing an individual of money, getting back in the car and driving off.

And then assuming further that around 3:30 that same morning, that a third individual is approached in an alley off Mallul Street in Anaheim, once again, same person driving, passenger gets out, points the pellet gun at somebody and takes money from him, and then a few minutes later, or around the same time, right around 3:30 in Garden Grove on Bayport, the same two individuals with the same person driving, the passenger gets out of the car, goes up to an individual, displays the gun in some manner and take properties from her, and then gets back into the car and drives off, and then the same two individuals are stopped five to ten minutes later at Katella and Anaheim.

Do you have an opinion as to whether or not the crimes of [robbery], each one of those four crimes were committed for the benefit of, at the direction of, or in association with the criminal street gang Hard Times, and with intent to promote, further and assist criminal conduct by members of the Hard Times gang?

Vi's response, following an overruled objection, was as follows:

My opinion is that, based on the scenario you gave me, the two Hard Timers, the crimes they were involved in benefit the gang itself, the action that they have done to glorify the gang.

. . . .

Not only do they glorify the gang but personally they increase the status of those two in the gang

itself, because, one, they commit this crime, the possibility of them involving other crimes are or being asked to do other crimes in the gang —

. . . .

It gives them the opportunity to participate in other crimes if other Hard Timers solicit them to assist.

Subsequently, Vi was asked whether it would change his opinion to know that the robberies were committed to buy Christmas presents. He said it would not, because the status of the individuals would nevertheless be increased within the gang. On cross-examination, when asked about a robbery involving only a small amount of money, he responded that "it would glorify the gang not in the amount taken but it would glorify the gang that the actions were taken by the gang members."

On July 13, 2001, the jury convicted Briceno of four counts of second degree robbery, in violation of California Penal Code § 211, and four counts of street terrorism, in violation of California Penal Code § 186.22(a). The jury also found that all four robberies were committed for the benefit of, at the direction of, or in association with a criminal street gang within the meaning of California Penal Code § 186.22(b)(1). The jury made the same findings as to Landin.

The trial court found separately that Briceno had committed two prior serious or violent felonies within the meaning of the California Three Strikes Law and had previously served a prison term. Taking all factors into account and staying the imposition of the sentence for the street terrorism convictions, the court imposed upon Briceno an indeterminate sentence of 27 years to life and a determinate sentence of 23 years and 4 months. Included in the sentences were enhancements based on the criminal street gang findings.

IV. *Of the State Court Appeals and the Habeas Petition*

Briceno appealed his conviction to the California Court of Appeal. On June 20, 2003, the Court of Appeal issued an opinion in which it held that the criminal street gang enhancements provided under § 186.22 "cannot be used to transform an unenumerated offense into a 'serious' felony" under the California Penal Code. *See Briceno*, 135 Cal. Rptr. 2d at 913. Accordingly, the Court of Appeal found that one of Briceno's prior convictions did not qualify as a serious or violent felony under California's Three Strikes Law, and remanded his case for resentencing. The Court of Appeal affirmed Briceno's judgment in all other respects. *Id.*

Thereafter, Briceno filed a petition for review in the California Supreme Court, contending that the admission in evidence of the gang expert's opinion testimony violated his jury trial and due process rights. He also contended that there was insufficient evidence to support one of his robbery convictions and the gang enhancements. The State of California also petitioned the California Supreme Court for review, asserting that the Court of Appeal erred in finding that felonies with gang enhancement are not serious felonies under the California Three Strikes Law. On September 24, 2003, the Supreme Court granted the State's petition only and, on November 4, 2004, issued its opinion in the case. *People v. Briceno*, 99 P.3d 1007 (Cal. 2004). In the opinion, the court determined that felonies with gang enhancements are serious felonies within the meaning of California's Three Strikes Law. *Id.* at 1014-15; *see also* Cal. Penal Code § 667. The court therefore reversed the judgment of the Court of Appeal insofar as it found that one of Briceno's convictions did not qualify as a serious felony, and affirmed the judgment in all other respects. *Briceno*, 99 P.3d at 1015.

On May 16, 2005, Briceno filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Central District of California. In

his petition, Briceno advanced the following three grounds for relief:

> Petitioner was denied due process and a trial by jury as a result of the gang expert's improper opinion testimony. . . .

> . . . .

> Petitioner was denied due process because there was insufficient evidence to support the robbery conviction on count 4 and the gang enhancements on Counts 1-4 beyond a reasonable doubt. . . .

> . . . .

> Petitioner was denied due process because there was insufficient evidence that his 1998 conviction was a prior felony conviction for purposes of the 3 strikes law and the enhancement under Pen. Code sec 667(a).

On May 11, 2006, Magistrate Judge Lum issued a comprehensive Report and Recommendation recommending denial of the petition in all respects. The District Judge adopted the Report and Recommendation over Briceno's objections in an Order dated July 19, 2006, and directed that judgment be entered dismissing the petition with prejudice. On May 11, 2007, the District Court issued an Order denying an application filed by Briceno for a certificate of appealability, finding that Briceno "has not made a substantial showing of the denial of a constitutional right, as is required to support the issuance of a Certificate of Appealability." An application for a certificate thereafter made to this court was granted by Order filed on August 2, 2007, with respect to the issues set forth in Part I above.

**ANALYSIS**

I.  *Of the Standards to be Applied*

We are constrained to undertake a *de novo* review of a district court's decision to deny a petition for habeas corpus. *See Lambert v. Blodgett*, 393 F.3d 943, 964 (9th Cir. 2004). Habeas relief cannot be granted to a state prisoner "with respect to any claim that was adjudicated on the merits in State court . . . unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Briceno seeks habeas relief from the state-court adjudication in his case on the basis of the first of these standards.

The Supreme Court has observed that § 2254(d) established a "highly deferential standard for evaluating state court rulings." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). A state court's decision is "contrary to" clearly established federal law only where "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). There is an "unreasonable application" of clearly established federal law when a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. A state court decision can also involve an unreasonable application of clearly established precedent "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where

it should apply." *Id.* at 407. The state court's error must be one that the habeas court concludes is objectively unreasonable, not merely erroneous or incorrect. *Id.* at 409-11.

## II.  *Of the Challenge to the Expert Testimony*

Briceno contends that the state appellate court, in affirming the state trial court, unreasonably applied established federal law by allowing expert testimony violative of his constitutional right to due process and a fair trial. Specifically, Briceno asserts that a reasonable application of settled law would result in a finding of constitutional error in admitting Peter Vi's testimony that the robberies for which Briceno was convicted were committed for the benefit of a criminal street gang. It will be remembered that Vi was given a hypothetical question asking him to assume the precise facts of the robberies and, based on these facts, to tell the jury whether each crime was committed "for the benefit of, at the direction of, or in association with the criminal street gang Hard Times, and with intent to promote, further and assist criminal conduct by members of the . . . gang." Vi's response, the object of this challenge, was to give his "opinion . . . that . . . the two Hard Timers, the crimes they were involved in benefit the gang itself, the action that they have done to glorify the gang."

Briceno claims that Vi's "testimony should have been excluded because it was based on facts insufficient to support an opinion on the issue, constituted improper opinion on guilt, and essentially directed the jury to find the gang enhancements true." In holding that the trial court did not abuse its discretion in determining that Vi's expert opinion would assist the jury in deciding whether the prosecution had proved the gang enhancement allegations, the appellate court referred to California precedent:

> As *People v. Olguin* (1994) 31 Cal. App. 4th 1355, 37 Cal. Rptr. 2d 596[,] explains, "[t]he requirements for expert testimony are that it relate to a subject suf-

ficiently beyond common experience as to assist the trier of fact and be based on matter that is reasonably relied upon by an expert in forming an opinion on the subject to which his or her testimony relates. Such evidence is admissible even though it encompasses the ultimate issue in the case."

*People v. Briceno*, Nos. G029525, G029607, 2003 WL 1710927, at *2 (Cal. Ct. App. Mar. 28, 2003) (internal citations omitted). Indeed, California Evidence Code § 801(a) provides that an expert witness may give opinion testimony if the opinion is "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." Applying its precedent, the Court of Appeal found that "Vi's expert testimony focused on whether these particular incidents were 'gang-related activity.' . . . Vi did not offer opinions on the definitions of crimes, whether a crime had been committed, or on defendant's guilt." *Briceno*, 2003 WL 1710927, at *2 (internal citations omitted).

**[1]** In any event, evidence erroneously admitted warrants habeas relief only when it results in the denial of a fundamentally fair trial in violation of the right to due process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Federal habeas courts do not review questions of state evidentiary law. *Id.* Our habeas powers do not allow us to vacate a conviction "based on a belief that the trial judge incorrectly interpreted the California Evidence Code in ruling" on the admissibility of evidence. *Id.* at 72. With regard to expert testimony, we recently noted that we have found no cases "support[ing] the general proposition that the Constitution is violated by the admission of expert testimony concerning an ultimate issue to be resolved by the trier of fact." *Moses v. Payne*, 543 F.3d 1090, 1105 (9th Cir. 2008). "Although '[a] witness is not permitted to give a direct opinion about the defendant's guilt or innocence . . . . an expert may otherwise testify regarding even an ultimate issue to be resolved by the trier of fact.' " *Id.* at 1106 (quoting *United States v. Lockett*,

919 F.2d 585, 590 (9th Cir. 1990) (alteration in original)). We found this "not surprising," *id.*, in light of the well-established rule permitting opinion testimony on ultimate issues, *see Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004).

**[2]** The thrust of Briceno's evidentiary challenge is that Vi's testimony that the hypothetical robberies would have been gang-related should have been excluded as pertaining to an ultimate issue for the jury. Our recent decision in *Moses* forecloses such a challenge, as it holds that there is no clearly established constitutional right to be free of an expert opinion on an ultimate issue. *See* 543 F.3d at 1105-06. Accordingly, the admission of the opinion testimony of Peter Vi cannot be said to be contrary to, or an unreasonable application of, Supreme Court precedent.

III.  *Of the Sufficiency of the Evidence to Support the Gang Enhancement Penalties*

Briceno also argues that the evidence at trial was insufficient to support the enhancements, as there was not sufficient evidence to sustain the conclusion that the robberies were committed with the specific intent to benefit a criminal street gang. We agree.

To prevail on an insufficiency of evidence claim, a habeas petitioner must show that "upon the record evidence adduced at the trial[,] no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). An additional layer of deference is added to this standard by 28 U.S.C. § 2254(d), which obliges Briceno to demonstrate that the state court's adjudication entailed an unreasonable application of the quoted *Jackson* standard. *See Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

**[3]** To warrant a gang enhancement, California law requires the prosecutor to prove two things. First, the prosecutor must

demonstrate that the defendant committed a felony "for the benefit of, at the direction of, or in association with [a] criminal street gang." Cal. Penal Code § 186.22(b)(1). Second, the prosecutor must show that the defendant committed the crime "with the specific intent to promote, further, or assist in any criminal conduct by gang members." *Id.* We have previously recognized the importance of keeping these two requirements separate, and have emphasized that the second step is not satisfied by evidence of mere membership in a criminal street gang alone. *See Garcia v. Carey*, 395 F.3d 1099, 1102-03 & n.5 (9th Cir. 2005).

The California Court of Appeal limited its analysis of the sufficiency of the evidence supporting the criminal street gang enhancements to the following:

> Defendants note there was evidence to show the crimes were committed for personal gain (money to buy Christmas gifts) rather than any gang-related purpose. The problem with this argument is that [it] ignores Vi's expert testimony explaining how the commission of these crimes would enhance the reputation not only of the gang itself but of the individual participants as well. Based on this evidence, the jurors could reasonably have found the gang enhancement allegations were true. It was for the jurors to resolve any credibility issues or conflicts in the evidence. We cannot second-guess their decision on appeal.

*Briceno*, 2003 WL 1710927, at *3. Under our case law, this analysis represents an unreasonable application of the *Jackson* standard, for several reasons.

**[4]** First, Vi's testimony did not establish Briceno's specific intent in committing the robberies, nor could it. Vi's testimony dealt almost exclusively in hypotheticals; he did not provide any direct or circumstantial evidence of Briceno and

Landin's own intent. Even when asked whether he had "an opinion as to whether or not [the robberies] . . . were committed . . . with intent to promote, further and assist criminal conduct by members of the Hard Times gang," Vi did not provide such an opinion. Instead, he responded in generalities, stating that such crimes "glorif[ied]" the gang and increased the status of the offenders.[1] Although we need not decide whether there was sufficient evidence with regard to the first prong of the gang enhancement, Vi's testimony might have helped to establish the first element of the gang enhancement, *i.e.*, that the crime ultimately benefitted the gang in some way. But it says nothing about Briceno's *specific intent* in committing the robberies.[2]

[5] Second, the California Court of Appeal's analysis runs afoul of this court's decision in *Garcia v. Carey*. In *Garcia*, the defendant, a known gang member, robbed the victim "in an area known to be in the heart of the gang's 'turf.' " 395 F.3d at 1103. Although a police expert testified that the defendant's gang was "turf-oriented," we held that there was insufficient evidence to warrant an enhanced sentence under § 186.22(b)(1) because there was no evidence, aside from the gang expert's generic testimony, "that would support an inference that Garcia robbed [the victim] with the specific intent to facilitate other criminal conduct by the [gang]." *Id.* Aside from evidence of Garcia's gang membership, the record was "singularly silent" as to "what criminal activity of the gang

---

[1]An affirmative response by Vi, combined with his expressed judgment that the crimes were committed for the benefit of the gang, would probably have amounted to an expert opinion that Briceno was guilty, and so would have been improper. *See Moses*, 543 F.3d at 1106; *Lockett*, 919 F.2d at 590. We need not so decide, however, as Vi did not in fact testify as to Briceno's specific intent.

[2]Moreover, Vi was precluded from testifying about the intent issue. Under California law, a gang expert cannot testify as to a defendant's specific intent in committing a crime. *See In re Frank S.*, 46 Cal. Rptr. 3d 839, 842-44 (Ct. App. 2006); *People v. Killebrew*, 126 Cal. Rptr. 2d 876, 886 (Ct. App. 2002).

was . . . intended to be furthered by the robbery." *Id.* We concluded that this lack of evidence triggered application of the *Jackson* standard, as "[w]ithout this evidentiary link, it is unreasonable to conclude that a rational jury could find that Garcia committed [this robbery] with the specific intent to facilitate other gang crimes. There was simply a total failure of proof of the requisite specific intent."[3] *Id.* at 1104.

The State urges us to disregard *Garcia*, citing two California appellate court decisions holding that *Garcia* misinterpreted California law. *See People v. Hill*, 47 Cal. Rptr. 3d 875, 877 (Ct. App. 2006); *People v. Romero*, 43 Cal. Rptr. 3d 862, 865 (Ct. App. 2006). *Romero* and *Hill* both held that "the specific intent element is satisfied if [the defendant] had the specific intent to 'promote, further, or assist' [a fellow gang member] in [any criminal conduct]." *Romero*, 43 Cal. Rptr. 3d at 866; *Hill*, 47 Cal. Rptr. 3d at 877. The State argues that we are bound by this construction of the statute, under which the gang enhancements are warranted so long as Briceno intended to assist Landin in the commission of the crime and knew that Landin was a gang member.

[6] Although we are ordinarily bound by a state's highest court's interpretation of its own statute, *see Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986), none of the post-*Garcia* cases cited by the State were decided by the

---

[3]The dissent draws a distinction between this appeal, which involves the commission of a crime with another gang member, and *Garcia*, which involved the commission of a crime by one gang member and another who may or may not have been a gang member, to conclude that our reliance on *Garcia* is misplaced. Diss. Op. at 2109-10. This distinction is irrelevant. *Garcia* concluded only that the specific intent required under § 186.22(b) must be to facilitate other criminal activities by gang members. *See Garcia*, 395 F.3d at 1103-04. The court's reading of § 186.22(b) in *Garcia* does not depend upon whether the defendant acted alone or with another gang member. A defendant acting alone is capable of as much intent to facilitate gang activities as two defendants acting in concert. That Briceno committed the crimes alone, with Landin, or with ten other gang members is not dispositive in identifying the necessary specific intent.

California Supreme Court, which has yet to address this issue. This panel would therefore normally be bound by the prior panel's decision in *Garcia*, which expressly rejected the same interpretation of § 186.22(b) advanced by the State in this case. The State argues, however, that intervening case law in the lower state courts, *i.e.*, *Romero* and *Hill*, has cast doubt on *Garcia*. "In the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently." *Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983) (internal quotation marks omitted); *see also In re Watts*, 298 F.3d 1077, 1082-83 (9th Cir. 2002); *Dimidowich*, 803 F.2d at 1482. Our task is therefore to determine whether, after *Romero* and *Hill*, there remain convincing reasons to believe that the California Supreme Court would hold the sentencing enhancements available under § 186.22(b) inapplicable to Briceno's case.

[7] To the extent that the California Supreme Court has provided an authoritative interpretation of § 186.22(b), that interpretation suggests that the Court would not adopt the State's understanding of *Romero* and *Hill*. In *People v. Gardeley*, 927 P.2d 713 (Cal. 1997) (as modified), the California Supreme Court noted that the statute "does not criminalize mere gang membership; rather, it imposes increased criminal penalties only when the criminal conduct is felonious and committed not only 'for the benefit of, at the direction of, or in association with' a [gang], but also with the 'specific intent to promote, further, or assist in any criminal conduct by gang members.' " *Id.* at 725. The court further explained that these "detailed requirements" were designed to ensure that the statute increased punishment only when a defendant "committed a felony to aid or abet criminal conduct *of a group* that has as a primary function the commission of specified criminal acts and whose members have actually committed specified crimes, and who acted with the specific intent to do so." *Id.* at 725 & n.10 (emphasis added). In contrast to the State's

interpretation of *Romero* and *Hill*, *Gardeley* suggests that merely being a gang member, or committing a crime in association with another gang member, is not enough to trigger the sentencing enhancements of § 186.22(b). Rather, the defendant must commit the crime with the specific intent to aid or abet the criminal conduct of the gang. This is precisely the evidence lacking in Briceno's case.

Moreover, as this court previously recognized in *Garcia*, the California Supreme Court's analysis in *Gardeley* highlights the type of evidence necessary to sustain gang enhancements under § 186.22(b). In *Gardeley*, the California Supreme Court found sufficient evidence of gang-related criminal conduct where two gang members severely beat and robbed their victim in full view of neighboring apartment residents. A gang expert testified that such an assault on the gang's own "turf," where they had effectively monopolized the drug trade, was committed to intimidate local residents and dissuade them from reporting the gang's activities. *Id.* at 716-18. The court recognized the assault as a " 'classic' example of gang-related activity," holding that such testimony allowed the jury to reasonably conclude that the assault was committed "with a specific intent to promote, further, or assist in . . . criminal conduct by gang members." *Id.* at 722.

**[8]** This theme also runs throughout the other California cases cited by the State, including *Romero* and *Hill*. In each case, a jury could reasonably conclude that the defendant committed the crime with the specific intent to benefit the gang, as the defendant either committed the crime to protect gang "turf" or brandished gang signs or a gang moniker during the attack. *See, e.g.*, *People v. Villalobos*, 51 Cal. Rptr. 3d 678, 681 (Ct. App. 2007) (crime committed on gang turf); *Hill*, 47 Cal. Rptr. 3d at 876 (defendant announced gang membership); *Romero*, 43 Cal. Rptr. at 864-65 (retaliatory shooting on a rival gang's turf).[4] Here, by contrast, such cir-

---

[4]The one case relied upon by the State that did not involve a specific indicia of gang-related criminal conduct was decided prior to our decision

cumstantial evidence of intent is wholly lacking: the individual robberies were not committed in Hard Times gang territory or on the "turf" of a rival gang, neither Briceno nor Landin made their gang membership known to the robbery victims, and, indeed, there is no evidence whatsoever of any connection between the gang and the robberies.[5]

---

in *Garcia*, and specifically distinguished a case like Briceno's. In *People v. Morales*, 5 Cal. Rptr. 3d 615 (Ct. App. 2003), three gang members committed a robbery during a drug deal gone bad. The Court of Appeal sustained gang enhancements because "there was evidence that defendant intended to commit robberies, that he intended to commit them in association with Flores and Moreno, and that he knew that Flores and Moreno were members of his gang." *Id.* at 632. The court noted, however, that "[a]dmittedly, it is conceivable that several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang. Here, however, there was no evidence of this. Thus, the jury could reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with fellow gang members." *Id.*

Given our analysis of *Gardeley*, we doubt that *Morales* is an accurate statement of California law, and the *Garcia* panel must be taken to have so determined. But even if it were, Briceno correctly points out that the only evidence presented to the jury as to his specific intent indicated that he and Landin committed the robberies "on a frolic and detour unrelated to the gang," namely, to buy Christmas presents.

[5]Given this lack of evidence, Briceno presents an even stronger case than the defendant in *Garcia*. In that case, the defendant committed a robbery on gang turf and announced himself to the victim as "Little Risky from [El Monte Flores, his gang]." 395 F.3d at 1101. Although the State argued on appeal that the turf-oriented nature of the crime and the use of a gang moniker demonstrated that Garcia intended to instill fear of the gang in residents of the neighborhood to facilitate gang operations, the panel majority rejected "this theory of specific intent" because it "had never been argued to the jury by the prosecution and the jury had not been asked to make such an inference." *Id.* at 1103. In dissent, Judge Wallace argued that "[a] rational juror could infer from [the use of a gang moniker] that Garcia intended to intimidate [the victim] and the store owner by letting them know that they were dealing with an E.M.F. member on E.M.F. turf, so that . . . a perceived challenger to the gang's authority[ ] would know not to intrude on E.M.F. turf in the future and so that the store owner would submit to the gang's dominance." *Id.* at 1107 (Wallace, J., dissent-

Finally, even if we were to defer to the post-*Garcia* decisions of the California Courts of Appeal, not all of those decisions have adopted the expansive reading of § 186.22(b) advanced by the State. In *In re Frank S.*, for example, the State sought gang enhancements based solely on an expert witness's testimony that the defendant was a gang member and that his criminal conduct would benefit the gang. 141 Cal. Rptr. 3d at 841. The Court of Appeal held this evidence insufficient, explaining that while "a trier of fact may rely on expert testimony about gang culture and habits to reach a finding on a gang allegation," such testimony is insufficient to establish "that a specific individual possessed a specific intent."[6] *Id.* at 842; *see also Killebrew*, 126 Cal. Rptr. 2d at 886-87. In Briceno's case, of course, the testimony of a gang expert was all that the State presented to establish specific intent. Thus, even if we were to defer to the state courts' post-*Garcia* interpretation of § 186.22(b), it is not at all clear that a gang enhancement could be sustained in this case.

**[9]** We conclude that on the facts of this case, the California Supreme Court would not hold that there was sufficient evidence to establish a "specific intent to promote, further, or assist in any criminal conduct by gang members," as required by statute. *See* CAL. PENAL CODE § 186.22(b)(1). According to the dissent, however, the California Supreme Court "has already considered and implicitly rejected Briceno's argument regarding insufficiency of the evidence[.]" Diss. Op. at 2107.

---

ing). In Judge Wallace's view, such evidence was sufficient to establish specific intent. But neither the majority nor the dissenting opinions in *Garcia* support sustaining a gang enhancement in the absence of any evidence that the defendant intended to protect gang turf or facilitate gang operations.

[6]The court expressly noted that it was publishing its decision to rein in an overly expansive reading of § 186.22(b): "We publish this case to emphasize that crimes may not be found to be gang-related based solely upon a perpetrator's criminal history and gang affiliation." 46 Cal. Rptr. 3d at 841.

We disagree. In the state proceedings, both the State and Briceno filed petitions for review with the California Supreme Court. The California Supreme Court granted only the State's petition for review. That petition related to a separate legal question concerning California's Three Strikes law. *See People v. Briceno*, 77 P.3d 3 (Cal. 2003); Petition for Review, No. S117641, *available at* 2003 WL 23015606, at *2 (filed July 28, 2003). None of the justices voted to grant Briceno's petition for review as to the question of whether "the commission of a crime with a fellow gang member, without more, [is] sufficient to prove the crimes were gang related . . . ." *See Briceno*, 77 P.3d at 3; Petition for Review, No. S117641, *available at* 2003 WL 23015605, at *2. The briefing in the case further demonstrates that the gang enhancements were not before the California Supreme Court, as the parties addressed only the Three Strikes issue. Concluding its opinion on that issue, the court wrote: "In all other respects, the judgment [of Briceno's conviction] is affirmed." *Briceno*, 99 P.3d at 1015. Contrary to the reasoning of the dissent, it is unlikely that the California Supreme Court, in a single boilerplate sentence at the end of its opinion on an issue that it decided to review at the behest of one party, intended to express an authoritative view on an issue presented by another party that it had in fact expressly decided *not* to review. *See In re KF Dairies, Inc. & Affiliates*, 224 F.3d 922, 925 n.3 (9th Cir. 2000); *cf. Trope v. Katz*, 902 P.2d 259, 268 n.1 (Cal. 1995) ("It is well established that our refusal to grant a hearing in a particular case is to be given *no* weight insofar as it might be deemed that we have acquiesced in the law as enunciated in a published opinion of a Court of Appeal when such opinion is in conflict with the law stated by this [C]ourt." (internal quotation marks omitted; emphasis in original)). We think that the portion of the gang enhancement statute requiring specific intent has a plain meaning, that our interpretation is consistent with *Garcia* and *Gardeley*, and that the California Supreme Court is likely to conclude that the mere fact that Briceno committed the robberies with another gang member

is insufficient to support a gang enhancement under § 186.22(b).

We emphasize that *Garcia* does not displace the *Jackson* standard as the proper lens with which we review state-court decisions. This court's decision in *Garcia* remains persuasive because it analyzed the only California Supreme Court decision addressing § 186.22(b), *i.e.*, *Gardeley*, 927 P.2d 713, to guide this court's interpretation of the elements of § 186.22(b). *See Garcia*, 395 F.3d at 1103-04. Moreover, *Garcia* interpreted the substantive elements of § 186.22(b) based on legal considerations that remain valid in this appeal, namely, the California Supreme Court's decision in *Gardeley*, and the specific-intent language in § 186.22(b), which has not been amended since *Gardeley*. *See Garcia*, 395 F.3d at 1103-04. Indeed, the California Supreme Court has not, to date, invalidated this court's interpretation of § 186.22(b) or otherwise disagreed with *Garcia* in any decision.

**[10]** We therefore hold that the appellate court's conclusion in this case represents an unreasonable application of the *Jackson* standard, and we grant Briceno's petition for a writ of habeas corpus as to the sufficiency of the evidence.

## CONCLUSION

In view of the foregoing, we affirm in part, reverse in part, and remand for the District Court to grant the habeas petition as to the imposition of the criminal street gang sentence enhancements.

**AFFIRMED in part; REVERSED in part; and REMANDED**.

Costs are awarded to Petitioner Briceno.

WARDLAW, Circuit Judge, concurring in part and dissenting in part:

I concur in the opinion, except as to Part III of the analysis. As to Part III, I must respectfully dissent, principally due to the standards we must apply on habeas review.

In the words of the California Court of Appeal, Alberto Briceno and Evaristo Landin "launched a grinchly crime wave on Christmas Day 2000," and were ultimately convicted of four armed robberies, each committed within a three-hour time span that day. Although there was evidence at trial that the crimes were committed for personal gain (stealing money to buy Christmas gifts), the jury found that a sentencing enhancement was warranted based on the gang-related nature of the crimes. Briceno's sentence was enhanced under California's gang enhancement statute, which provides an enhancement for "any person who is convicted of a felony committed [(1)] for the benefit of, at the direction of, or in association with any criminal street gang, [(2)] with the *specific intent* to promote, further, or assist in any criminal conduct by gang members." Cal. Penal Code § 186.22(b)(1) (emphasis added). The two prongs are considered separately. *See, e.g.*, *People v. Morales*, 5 Cal. Rptr. 3d 615, 632 (Ct. App. 2003); *see also* Maj. Op. at 2092-93.[1] The majority holds that "there was not sufficient evidence to sustain the conclusion that the robberies were committed with the specific intent to benefit a criminal street gang." Maj. Op. at 2092.[2]

---

[1] I agree with the majority that we need not decide whether Peter Vi's expert testimony was sufficient evidence from which a rational trier of fact could find that the first element of the statute was proven beyond a reasonable doubt. *See* Maj. Op. at 2094 ("[Vi's] testimony might have helped to establish the first element of the gang enhancement, *i.e.*, that the crime ultimately benefitted the gang in some way."). Thus, the focus of our disagreement is whether sufficient evidence supports the second, specific intent, element of the statute.

[2] The majority opinion intermittently conflates the analysis of the two prongs, as does the Court of Appeal's decision. The second prong requires

I disagree that the state court unreasonably interpreted its own law in finding that the gang enhancement was supported by sufficient evidence, and would affirm the district court.

Our task is to decide whether the state court's adjudication entailed an unreasonable application of *Jackson v. Virginia*, which permits reversal only when "upon the record evidence adduced at the trial[,] no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 U.S. 307, 324 (1979); *see* 28 U.S.C. § 2254(d)(1); *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). In determining whether sufficient evidence supports the state law statutory enhancement, we are bound by "a state court's interpretation of state law." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). If, as here, there is no controlling "pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state[,] unless there is convincing evidence that the highest court of the state would decide differently." *Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983) (internal quotation marks omitted).

The three directly relevant decisions by the California Court of Appeal hold that to prove "specific intent to . . . assist in any criminal conduct by gang members," it is sufficient to demonstrate that the "defendant intended to commit [the crimes], that he intended to commit them in association with [his accomplices], and that he knew that [his accomplices] were members of his gang." *Morales*, 5 Cal. Rptr. 3d at 632; *see also People v. Villalobos*, 51 Cal. Rptr. 3d 678, 687 (Ct. App. 2007) ("Commission of a crime in concert with known gang members is substantial evidence which supports

---

proof *not* that defendant had specific intent to "benefit" the gang, but that he had specific intent to "promote, further, or assist in any criminal conduct by gang members." *Compare* Cal. Penal Code § 186.22(b)(1), *with* Maj. Op. at 2092-93, 2097-98, *and People v. Briceno*, Nos. G029525, G029607, 2003 WL 1710927, at *3 (Cal. Ct. App. Mar. 28, 2003).

the inference that the defendant acted with the specific intent to promote, further or assist gang members in the commission of the crime."); *People v. Romero*, 43 Cal. Rptr. 3d 862, 866 (Ct. App. 2006) ("There was ample evidence that appellant intended to commit a crime, that he intended to help [his accomplice] commit a crime, and that he knew [his accomplice] was a member of his gang.");[3] *cf. People v. Hill*, 47 Cal. Rptr. 3d 875, 877 (Ct. App. 2006) (finding specific intent to enable gang-related activity when one gang member commits a crime).[4] Under this unequivocal state law, it follows that a

---

[3]The majority attempts to assign significance to the factual circumstances of *Villalobos* and *Romero*, suggesting that to support a finding of specific intent, it is necessary to find that the "defendant intended to protect gang turf or facilitate gang operations." *See* Maj. Op. at 2097-98 & n.5 (citing *Villalobos*, 51 Cal. Rptr. 3d at 681 (crime committed on gang turf); *Romero*, 43 Cal. Rptr. 3d at 864-65 (retaliatory shooting on a rival gang's turf)). The presence of gang-related indicia may be relevant to the determination of whether the crime was committed "for the benefit of, at the direction of, or in association with" the gang. There is absolutely no indication in either opinion, however, that the Court of Appeal relied on the geographic location of the crime or the presence of gang-related indicia to support its finding of specific intent. *See Villalobos*, 51 Cal. Rptr. 3d at 686-87; *Romero*, 43 Cal. Rptr. 3d at 865-66. Here, only the specific intent element of the statute is at issue. Therefore, the lack of gang-related indicia is not dispositive. Further, the majority concedes that *Morales* "did not involve a specific indicia of gang-related criminal conduct," but argues that Briceno's case falls into the "frolic and detour" exception. *See* Maj. Op. at 2097-98 n.4 (citing *Morales*, 5 Cal. Rptr. 3d at 632 ("[I]t is conceivable that several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang.")). This exception, however, also applies only to the first prong of the statute. *Morales* suggested only that it is possible that two gang members committing a crime together are not necessarily acting "in association" with a gang. The "frolic and detour" exception, as articulated in *Morales*, cannot underlie a finding that a defendant lacked specific intent to "assist in any criminal conduct by gang members." Cal. Penal Code § 186.22(b).

[4]The Court of Appeal in *Hill* found that specific intent was established because the "defendant's own criminal threat qualified as the gang-related criminal activity"; therefore, by committing the crime, the defendant acted with specific intent to further that activity. 47 Cal. Rptr. 3d at 877. Because *Hill* concerns the commission of a crime by one gang member

rational jury could conclude beyond a reasonable doubt that Briceno had the specific intent to assist in criminal conduct by gang members because he intended to commit the four robberies in the short time span using the same modus operandi, intended to commit them in association with Landin, and knew that Landin was also an active member of the Hard Times criminal street gang. In other words, under the reasoning in *Morales*, *Villalobos*, and *Romero*, Landin's crimes qualify as "any criminal conduct by gang members," and Briceno's purposeful assistance to Landin in this criminal conduct qualifies as "specific intent to . . . assist" that criminal conduct. Briceno does not dispute that he intended to commit at least three of the crimes, that he intended to commit the crimes in association with Landin, and that he knew Landin was a gang member. Although the Court of Appeal also relied upon Peter Vi's expert testimony to conclude that there was sufficient evidence to support the gang enhancement, that reliance was unnecessary to its decision.[5]

The reasoning in *Morales*, *Villalobos*, and *Romero* controls our decision because there is no "convincing evidence that the highest court of the state would decide differently." *Owen*, 713 F.2d at 1464 (internal quotation marks omitted). The majority, however, declines to follow these decisions. Relying on an erroneous interpretation of *People v. Gardeley*, 927 P.2d 713 (Cal. 1997), the one California Supreme Court pro-

---

acting alone, it is least relevant here, where two gang members acted in concert. Therefore, we do not need to decide whether the Supreme Court would agree that the commission of a crime by one gang member acting alone, with the attendant mention of the gang association to the victim, is sufficient to warrant application of the gang enhancement statute.

[5]The majority correctly points out that Vi did not, and could not, provide an opinion regarding Briceno's specific intent. Therefore, *In re Frank S.*, 46 Cal. Rptr. 3d 839, 842-44 (Ct. App. 2006), and *People v. Killebrew*, 126 Cal. Rptr. 2d 876, 886 (Ct. App. 2002), are inapposite because those cases address the impropriety of expert testimony to establish specific intent.

nouncement on gang enhancements, the majority concludes that the California Supreme Court would decide the specific intent question differently from the Court of Appeal. In *Gardeley*, the Supreme Court found sufficient evidence to support the sentencing enhancement when multiple gang members acting together violently assaulted an intruder on their turf in order "to frighten the residents of an area where the gang members sell drugs, thereby securing the gang's drug-dealing stronghold." *Id.* at 722. In the expert's opinion, this was a " 'classic' example of gang-related activity." *Id.* The majority points out that *Gardeley* holds that the statute enhances the sentence only when the defendant commits "a felony to aid or abet criminal conduct of a group that has as a primary function the commission of specified criminal acts and whose members have actually committed specified crimes, and who acted with the specific intent to do so." *Id.* at 725 n.10. The majority's point is correct but inapposite. *Gardeley* stands for the proposition that the statute "does not criminalize mere gang membership." *Id.* at 725. It does not support the contention that the majority purports to make— that the Supreme Court would hold that the commission of a crime with another gang member is insufficient to establish specific intent to "assist in any criminal conduct by gang members."

Further, though intimidation of intruders to maintain turf dominance may be a "classic" example of gang-related activity, there is no indication that gang-related activities occurring outside the turf cannot serve as a basis for enhancement. "Classic" gang-related activity is not "necessary to sustain gang enhancements," contrary to the majority's contention. *See* Maj. Op. at 2097. Thus, *Gardeley* does not present "convincing evidence" that would allow us to reject the reasoning of the California appellate courts. *Owen*, 713 F.2d at 1464.

In concluding that "on the facts of this case, the California Supreme Court would not hold that there was sufficient evidence to establish a 'specific intent to promote, further, or

assist in any criminal conduct by gang members,' " Maj. Op. at 2099, the majority ignores that the California Supreme Court has already considered and implicitly rejected Briceno's argument regarding insufficiency of the evidence to support the gang enhancement. After the Court of Appeal found that the record evidence was sufficient to support the gang enhancement, *Briceno*, 2003 WL 1710927, at *3, Briceno petitioned for review of that decision to the California Supreme Court, Defendant's Petition for Review, *Briceno*, 77 P.3d 3 (No. S117641), 2003 WL 23015605, at *2. The Supreme Court rejected Briceno's petition, but granted the State's cross-petition on a separate and unrelated issue. State's Petition for Review, *Briceno*, 77 P.3d 3 (No. S117641), 2003 WL 23015606. It reversed the Court of Appeal only with respect to its finding that Briceno did not "suffer[ ] a prior conviction for a serious felony." *People v. Briceno*, 99 P.3d 1007, 1008 (Cal. 2004). "In all other respects, [the Supreme Court] affirm[ed] the judgment." *Id.* at 1009.

The Supreme Court's summary affirmance has limited, but —for the purposes of this analysis—sufficient, precedential value. The summary affirmance of the judgment indicates, at most, agreement with the "precise issues framed and necessarily decided in the case below." *Hoffman v. State Bar of Cal.*, 6 Cal. Rptr. 3d 592, 604 n.10 (Ct. App. 2003); *see also Anderson v. Celebrezze*, 460 U.S. 780, 784 n.5 (1983) ("We have often recognized that the precedential effect of a summary affirmance extends no further than the precise issues presented and necessarily decided by those actions. A summary disposition affirms only the judgment of the court below, and no more may be read into our action than was essential to sustain that judgment." (internal quotation marks omitted)). Thus, though "summary affirmances" are "a rather slender reed on which to rest [a] decision," *Anderson*, 460 U.S. at 784 n.5 (internal quotation marks omitted), even this limited extent of agreement demonstrates that the Supreme

Court would find that the elements of section 186.22(b) were met in Briceno's case.

Further, the denial of Briceno's petition by the Supreme Court itself suggests that the Supreme Court would not disagree with the Court of Appeal's conclusion. An "order [denying review of a] decision of the District Court of Appeal *may be taken as an approval of the conclusion there reached*, but not necessarily of all of the reasoning contained in that opinion." *Di Genova v. State Bd. of Ed.*, 367 P.2d 865, 871 (Cal. 1962) (emphasis added) (internal quotation marks omitted). Again, this limited approval is sufficient for our purposes—establishing that the Supreme Court would agree with the Court of Appeal's decision that record evidence in Briceno's case sufficiently supports the two elements required for the enhancement.

The majority correctly points out that the Supreme Court's "refusal to grant a hearing in a particular case is to be given no weight insofar as it might be deemed that [it has] acquiesced in the law as enunciated in a published opinion of a Court of Appeal when such opinion is in conflict with the law as stated by [the Supreme C]ourt." *Trope v. Katz*, 902 P.2d 259, 268 n.1 (Cal. 1995) (emphasis and internal quotation marks omitted). I agree. No party should attempt to rely on the Court of Appeal's interpretation of the law in its unpublished opinion to the extent it is contradicted by a published holding of the Supreme Court. The Supreme Court does not have to agree with the Court of Appeal's *interpretation* of the statute, however. All we must determine—and the denial of review establishes this and no more—is that the Supreme Court agreed with the Court of Appeal's conclusion that sufficient record evidence supports the enhancement as to Briceno.[6]

---

[6]While the majority purports to strictly follow some Ninth Circuit precedent, like *Garcia*, it completely ignores other precedent, like *Roman v. Estelle*, in which we held that "when the California Supreme Court denies a petition for hearing without citation or comment, it will be assumed that

The Supreme Court's agreement with the Court of Appeal in this case, therefore, presents "convincing evidence" that it would not disagree with the decisions of the California appellate courts.

The majority also purports to follow a Ninth Circuit decision that finds insufficient evidence for a gang enhancement when "there was *no* testimony or other evidence to support a rational inference that the robbery . . . was committed with the intent to further other criminal activity" of the gang. *Garcia v. Carey*, 395 F.3d 1099, 1104 (9th Cir. 2005). This reliance is unjustified for three reasons.

First, in the habeas context, it is inappropriate to hold, as the majority does, that "the California Court of Appeal's analysis runs afoul of this court's decision in *Garcia v. Carey*." Maj. Op. at 2094. The California state court was not bound by *Garcia* in its interpretation of section 186.22(b); nor may we analyze the state court's opinion for compliance therewith. We review the state court's decision only to determine whether it reasonably applied "clearly established Federal law," defined as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Clearly, *Garcia* does not fit this definition. "While circuit law may be persuasive authority for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's

the state supreme court has been given a fair opportunity to review the merits of the petitioner's claim." 917 F.2d 1505, 1506 (9th Cir. 1990) (internal quotation marks omitted). There is no doubt that in Briceno's petition for review, the California Supreme Court was presented with the exact question we are answering today and, thus, had the opportunity to review the claim on the merits. *See* Defendant's Petition for Review, *Briceno*, 77 P.3d 3 (No. S117641), 2003 WL 23015605, at *2 ("Is the commission of a crime with a fellow gang member, without more, sufficient to prove the crimes were gang related . . . ?").

holdings are binding on the state courts and only those holdings need be reasonably applied." *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003) (citation and internal quotation marks omitted). The applicable federal law is the *Jackson* standard, and there is no indication that the state court unreasonably held that a rational trier of fact could have found the gang enhancement true beyond a reasonable doubt. Our reasoning in *Garcia*, then, is only persuasive authority that should be rejected when, as here, it is contrary to the state's own interpretation of its statute. *See Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986).

Second, we could follow *Garcia* only if faced with "convincing evidence" that allows us to set aside the contrary appellate court decisions. *Owen*, 713 F.2d at 1464. As explained above, we are not. In *Owen*, we were presented with a previous Ninth Circuit decision, *Commercial Union Insurance Co. v. Ford Motor Co.*, 640 F.2d 210 (9th Cir. 1981), which interpreted California Civil Procedure Code section 877. Subsequent California Court of Appeal's decisions articulated a different interpretation. We stated that "[o]ur interpretation in *Commercial Union* was only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect." *Owen*, 713 F.2d at 1464. Here, California courts could not have indicated more clearly that our interpretation of section 186.22(b) was incorrect. *Garcia* has been explicitly disapproved in two subsequent California Court of Appeal decisions. *See Romero*, 43 Cal. Rptr. 3d at 865 (declining to follow *Garcia* because "[b]y its plain language, the statute requires a showing of specific intent to promote, further, or assist in '*any* criminal conduct by gang members,' rather than *other* criminal conduct"); *Hill*, 47 Cal. Rptr. 3d at 877 (same). As explained above, there is no "convincing evidence" that might lead us to disregard these pronouncements; therefore, we cannot deem *Garcia* controlling.

Third, *Garcia* is not directly applicable because *Garcia* did not address the situation here: two gang members committing

a crime together. In *Garcia*, the defendant committed a liquor store robbery with accomplices; it is unclear whether the accomplices were fellow gang members. The State's theory of specific intent in that case was the fairly vague "facilitat[ion of] other gang-related criminal operations within El Monte," *Garcia*, 395 F.3d at 1103, a theory that could rest only on the statutory prohibition of "promot[ing] and further[ing] . . . any criminal conduct by gang members," Cal. Penal Code § 186.22(b). Here, by contrast, the State's theory of specific intent is predicated upon two gang members committing a crime together—a theory that rests on the statutory prohibition against "assist[ing] in any criminal conduct by gang members," *id.*, and a theory that *Garcia* did not directly address. Therefore, there is no basis for holding, as the majority does, that *Garcia* "expressly rejected the same interpretation of § 186.22(b) advanced by the State in this case." Maj. Op. at 2096.

The majority disregards the clear holding of the California appellate courts that a criminal act intentionally committed with another known gang member demonstrates specific intent to assist in criminal conduct by gang members—a holding that sustains the state court's finding of sufficient evidence to support the gang enhancement in Briceno's case. The majority's disregard of the Court of Appeal's decisions is unwarranted because there is no convincing evidence suggesting that the Supreme Court would decide the question differently, and because the California Supreme Court has already placed its stamp of approval on the Court of Appeal's conclusion in this case that, no matter the interpretation of the statute, Briceno's crimes warrant the sentencing enhancement. Because the Court of Appeal was not unreasonable in finding that a rational trier of fact applying state law could find the sentencing enhancement was proven beyond a reasonable doubt, I must dissent.