MOORE, Circuit Judge,
concurring in part and dissenting in part:
I concur with the majority’s holding in Part II.A on the issue of alienage. I also concur with the Memorandum Disposition. I dissent from Part II.B because I do not agree that Noriega-Perez’s convictions for aiding and abetting a “brings to” offense should stand where the evidence clearly demonstrates that the cross-border transportation of a specific material witness terminated before any connection between Noriega-Perez and that alien occurred.
Noriega-Perez was charged with eighteen counts of aiding and abetting “brings to”[1] offenses under 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2. A different alien was named as the material witness in each count. To be guilty of aiding and abetting a “brings to” offense, the defendant must provide some assistance to the transporters of a named alien before the termination of the underlying offense. Otherwise, the requisite extraterritorial nexus is lacking. A “brings to” offense does not terminate upon the alien crossing the border into the United States, however, even though that is the point at which all of the statutory elements are satisfied. United States v. Lopez, 484 F.3d 1186, 1192 (9th Cir.2007) (en banc). Termination of a “brings to” offense occurs when “the initial transporter drops the aliens off at a location in the United States.” Id. at 1194 (emphasis added). A person whose activities are entirely domestic may be guilty of aiding and abetting a “brings to” offense if he induces or commands the principal to bring the alien across the border, id. at 1199-1200, or if he provides any assistance to the principal regarding the transportation of the alien before the offense terminates, United States v. Reyes-Bosque, 596 F.3d 1017, 1036 (9th Cir.2010) (holding operator of load house aided and abetted an alien’s crossing because the “bringing to” offense did not terminate until the alien arrived at his building), cert. denied, — U.S. -, 131 S.Ct. 898, 178 L.Ed.2d 758 (2011).
This Circuit on numerous occasions has rejected the use of general participation in smuggling activities alone to establish that a defendant aided and abetted the cross-border transportation of a specific alien. In United States v. Singh, the court began its analysis by noting that the strong evidence of the defendant’s general involvement in smuggling and his engagement in general preparatory work was insufficient on its own to establish aiding and abetting *1044 a “brings to” offense for a specific alien. 532 F.3d 1053, 1058-60 (9th Cir.2008). However, upon the showing of a nexus between the defendant’s general preparatory work and the “bringing to” of the alien — in Singh’s case a telephone conversation in close proximity to the alien’s arrival, during which the defendant agreed to drop the alien off somewhere else in the United States and to return the passport for a fee — the evidence became sufficient to establish that the defendant’s aid in the alien’s crossing came before the “brings to” violation terminated, even though the defendant did not physically pick up the alien until after the border crossing was complete. Id. at 1060-61.
In United States v. Hernandez-Orellana, the government again had indisputable evidence that the co-defendants participated in the general smuggling of illegal aliens. 539 F.3d 994, 1005-06 (9th Cir.2008). One of the defendants was found with a ledger keeping track of the many aliens whom she had helped cross the border, the dates of their crossings, and the rates for crossings, and someone had overheard the defendants discussing the potential smuggling of other unnamed aliens. The defendants were arrested together when they were found leaving a load house in the United States with two illegal aliens in the car. Id. at 997. Both defendants were charged with, among other counts, aiding and abetting the “bringing to” of those two specific aliens — Garcia and Reyes. This court held that the overwhelming general evidence of cross-border smuggling was insufficient to support the conviction of aiding and abetting the “bringing to” of those two aliens, because the defendants’ sole connection to Garcia and Reyes was that they were in the car when the defendants were stopped and detained:
Problematically for the government here, however, counts two and three specifically identify the aliens who were allegedly “brought to” the United States. The evidence presented to the jury stops short of linking those aliens to [the defendants] that would support their liability for conduct that occurred before the bringing to offense terminated. Significantly, the ledger and the journal make no reference to [the named] aliens Garcia or Reyes at all.
Id. at 1005. Because the government failed to provide “specific evidence linking [the defendants] to intentionally aiding, counseling, commanding, inducing or procuring the cross-border transportation of Reyes and Garcia, prior to when these aliens were dropped off in the United States,” the evidence was insufficient to support a conviction for aiding and abetting the offense of bringing those aliens to the United States. Id. at 1006(internal quotation marks and alterations omitted) (emphasis added).
Noriega-Perez was similarly charged with aiding and abetting the cross-border transportation of eighteen specific, named aliens. Of the eight material witnesses to testify, some stated that upon crossing the border they were first unloaded at one of Noriega-Perez’s properties. For these aliens, I agree with the majority that the evidence was sufficient to establish that Noriega-Perez aided and abetted their “bringing to” the United States, because his assistance came before the “bringing to” offense had terminated. See Reyes-Bosque, 596 F.3d at 1036. Other material witnesses, however, testified that they spent various periods of time at other properties before someone else transported them to Noriega-Perez’s property. The majority concedes that these aliens were brought to Noriega-Perez’s property after the “brings to” offense had unquestionably terminated, but nonetheless the majority concludes that the evidence suffi *1045 eiently linked Noriega-Perez to their cross-border transportation before termination. The majority does not dispute that there must be sufficient evidence linking Noriega-Perez to the cross-border transportation of each of the named material witnesses before the offense terminated, but, despite this acknowledgment, the majority relies solely on Noriega-Perez’s general participation in the smuggling ring and the fact that the aliens were arrested on Noriega-Perez’s property to hold that the evidence was sufficient for those witnesses whose border crossings indisputably terminated before they arrived at his house. I cannot agree.
As was true for the defendants in Hernandez-Orellana, Singh, and Reyes-Bosque, Noriega-Perez was undeniably involved in general smuggling activities before the cross-border transportation of each material witnesses occurred. As the majority correctly notes, Noriega-Perez’s load houses were part of a large smuggling organization bringing illegal aliens to the United States. He understood that his houses were an integral part of this organization, and he knew that the houses were harboring illegal aliens.[2] None of the evidence cited by the majority, however, makes any reference to any of the specific material witnesses whose crossings Noriega-Perez was charged with assisting until after they were brought to the United States. For those who arrived at Noriega-Perez’s load house after their initial transportation to the United States terminated, this deficiency is fatal, as it was in Hernandez-Orellana. The majority relies heavily on the fact that this was a load house and not a form of transportation to distinguish it somehow from Hernandez-Orellana and Lopez. I have found no support for this distinction. As was the case in Reyes-Bosque, even operators of load houses must have some pre-termination nexus to be guilty of aiding and abetting the cross-border transportation of an alien. 596 F.3d at 1036.[3] I do not agree that post-termination presence on Noriega-Perez’s property satisfies that requirement.
The limitations set forth in current precedent are not without good reason. Under the majority’s view, a load house owner is guilty of aiding and abetting the cross-border transportation of any illegal alien found on his property at any point, so long as he knew and understood the purpose of his house was to hold illegal aliens on behalf of the organization. If that same organization brings an alien to Texas, *1046 keeps him there for thirty days on someone else’s property, and then decides to have yet another person bring him to Noriega-Perez’s property in California, Noriega-Perez would be guilty, under the majority’s view, of aiding and abetting the cross-border transportation of that alien. The alien could be brought to ten different properties in the United States, using ten different drivers, and so long as he eventually ends up at Noriega-Perez’s load house, Noriega-Perez has aided and abetted, under the majority’s theory, the cross-border transportation of that alien. This sweeping approach is not consistent with Congress’s clear intent to create separate crimes for bringing an alien to the United States and for harboring an alien in the United States. See 8 U.S.C. § 1324(a)(1)(A)(iii) (separately criminalizing harboring or concealing an illegal alien within the United States); Lopez, 484 F.3d at 1196 (emphasizing “clear statutory distinction” between each of the § 1324 crimes). Hernandez-Orellana wisely distinguished the act of aiding and abetting an alien’s cross-border transportation from situations factually insufficient for the application of this statute, and I see no reason to depart from that well-drawn line today.
I would therefore affirm Noriega-Perez’s convictions for aiding and abetting the cross-border transportation of any of the material witnesses who were initially dropped at one of his load houses and reverse his convictions for aiding and abetting the cross-border transportation of those aliens whose cross border transportation terminated before reaching Noriega-Perez’s property.[4]

. This Circuit uses the phrase “brings to” and "bringing to” interchangeably to describe violations of § 1324(a)(2). United States v. Lopez, 484 F.3d 1186, 1188 n. 1 (9th Cir.2007) (en banc). Four types of conduct are prohibited in 8 U.S.C. § 1324: “(1) bringing an alien to the United States; (2) transporting or moving an illegal alien within the United States; (3) harboring or concealing an illegal alien within the United States; and (4) encouraging or inducing an illegal alien to enter the United States.” Id. at 1190-91.

. For this reason and the reasons set forth in the Memorandum Disposition, Noriega-Perez’s challenge to the count for conspiracy to bring aliens to the United States also fails, as the conspiracy count does not name or otherwise rely on the "bringing to” of any specific aliens. See also Hernandez-Orellana, 539 F.3d at 1008-09 (affirming conspiracy conviction for bringing aliens to the United States despite reversing convictions for two of the underlying substantive offenses).

. The Reyes-Bosque opinion is unusual in that it addresses the sufficiency of the evidence argument with respect to only one of the four counts for aiding and abetting a "brings to” offense, perhaps because the government focused its argument on that one alien in its brief on appeal. I do not view the court's lack of discussion of the other three aliens in Reyes-Bosque as creating a holding that we must impute an extraterritorial nexus to all material witnesses upon a showing that the nexus existed for one material witness, as that issue was not clearly before the court. Nor does the majority urge that approach today. I agree with the majority that the key evidence in Reyes-Bosque to support the defendant’s conviction for aiding and abetting a "brings to” offense was the testimony of the alien that his initial transporter dropped him off at the defendant’s load house such that the offense had not yet terminated. See Reyes-Bosque, 596 F.3d at 1036.

. For the ten material witnesses who did not testify, I would deem the evidence insufficient to establish the requisite nexus. In reviewing a jury verdict, we must give the government the benefit.of all reasonable inferences that can be drawn from the evidence and resolve all conflicts in the government’s favor. United States v. Nevils, 598 F.3d 1158, 1163-64 (9th Cir.2010) (en banc). However, the evidence remains insufficient where there is a "total failure of proof.” Id. at 1167 (quoting Briceno v. Scribner, 555 F.3d 1069, 1079 (9th Cir.2009)) (alteration in original). An inference on the issue of alienage was reasonable because the non-testifying witnesses were all apprehended under similar circumstances as those who testified, who in turn were all in the United States without permission. However, there was no evidence presented to support an inference that the non-testifying material witnesses were transported in the same manner as certain of the testifying witnesses but not the others. Because such an inference would not be reasonable on the evidence, I would reverse Noriega-Perez's convictions for those counts involving the non-testifying witnesses as well.